# Exhibit A

EXECUTION VERSION

EQUIPMENT LEASE AGREEMENT
**(QIMONDA LEASING TRUST 2007)**

dated as of September 28, 2007,

between

WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION,
not in its individual capacity but solely as Owner Trustee,
as Lessor

and

QIMONDA RICHMOND, LLC,
as Lessee

This Equipment Lease Agreement (Qimonda Leasing Trust 2007) (the "*Equipment Lease*") is subject to a first priority security interest in favor of BANK OF UTAH, as indenture trustee (in such capacity, the "*Indenture Trustee*") for the benefit of the Loan Participants under the Trust Indenture and Security Agreement (Qimonda Leasing Trust 2007), dated as of September 28, 2007, between WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, as owner trustee (in such capacity, the "*Owner Trustee*") and the Indenture Trustee. This Equipment Lease has been executed in several counterparts. To the extent, if any, that this Equipment Lease constitutes chattel paper (as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction) no security interest in this Equipment Lease may be created through the transfer or possession of any counterpart other than the original counterpart, which shall be identified as the original counterpart and containing the receipt therefor executed by the Indenture Trustee on the page following the signature page thereof.

2298740.06.04.doc
3602349

TABLE OF CONTENTS

*Page*

SECTION 1.          INTERPRETATION, DEFINITIONS AND RULES OF USAGE ................................ 1

SECTION 2.          LEASING OF EQUIPMENT ........................................................................ 1

SECTION 3.          EQUIPMENT LEASE TERM, RENT AND OTHER PAYMENTS ........................... 2

    (a)          Equipment Lease Term ................................................................. 2
    (b)          Equipment Lease Rent .................................................................. 2
    (c)          Supplemental Rent ....................................................................... 2
    (d)          Manner of Payment ...................................................................... 2
    (e)          Minimum Rent .............................................................................. 3

SECTION 4.          NET EQUIPMENT LEASE, ETC. ................................................................ 3

SECTION 5.          REPRESENTATIONS, WARRANTIES AND AGREEMENTS ............................. 4

SECTION 6.          POSSESSION, OPERATION AND USE, MAINTENANCE AND
                IDENTIFICATION ..................................................................................... 6

    (a)          Possession and Subleasing ........................................................... 6
    (b)          Operation and Use ....................................................................... 7
    (c)          Maintenance ................................................................................. 8
    (d)          Casualty not Constituting an Event of Loss ................................. 9
    (e)          Authorizations .............................................................................. 9
    (f)          Ownership ..................................................................................... 10
    (g)          Marking ........................................................................................ 10
    (h)          Equipment as Personal Property ................................................. 10

SECTION 7.          INSPECTION ......................................................................................... 11

SECTION 8.          REPLACEMENT AND OWNERSHIP OF PARTS; ALTERATIONS,
                MODIFICATIONS, ADDITIONS AND REPLACEMENTS ................................. 11

    (a)          Replacement of Parts ................................................................... 11
    (b)          Ownership of Parts ....................................................................... 12
    (c)          Alterations, Modifications and Additions .................................... 12

SECTION 9.          EVENT OF LOSS; REPLACEMENT ............................................................ 13

    (a)          Event of Loss ................................................................................ 13
    (b)          Non-Insurance Payments Received on Account of an Event
                of Loss ..................................................................................... 16
    (c)          Requisition for Use ...................................................................... 16
    (d)          Event of Loss at End of Equipment Lease Term ........................ 17

i

*Page*

(e)          Application of Payments During Existence of Defaults............................ 17

SECTION 10.      INSURANCE ............................................................................................... 17

(a)          Property and Liability Insurance ................................................................ 17
(b)          Insurance Policies ..................................................................................... 18
(c)          Application of Insurance Proceeds ............................................................ 19
(d)          Insurance Reports and Certificates ........................................................... 19
(e)          Failure to Maintain Insurance ................................................................... 20
(f)          Copies and Descriptions of Policies ......................................................... 20
(g)          Insurance For Own Account ...................................................................... 20

SECTION 11.      LIENS ........................................................................................................ 20

SECTION 12.      FURTHER ASSURANCES ............................................................................. 21

SECTION 13.      RETURN OF THE EQUIPMENT ..................................................................... 22

SECTION 14.      ALTERNATIVES AT THE END OF THE EQUIPMENT LEASE TERM ................. 24

(a)          End of Term Purchase Option; Renewal Option; Return ......................... 24
(b)          Notices ...................................................................................................... 24
(c)          Exercise of Purchase Option ..................................................................... 25

SECTION 15.      EVENTS OF DEFAULT ................................................................................. 25

SECTION 16.      REMEDIES .................................................................................................. 28

SECTION 17.      THE LESSOR'S RIGHT TO PERFORM FOR THE LESSEE ................................ 30

SECTION 18.      ASSIGNMENT; RECORDATION; MAINTENANCE OF REGISTER ...................... 31

(a)          Assignment ................................................................................................ 31
(b)          Maintenance of Register ........................................................................... 31

SECTION 19.      INVESTMENT OF SECURITY FUNDS ............................................................ 31

SECTION 20.      ACKNOWLEDGMENT OF ASSIGNMENT FOR SECURITY ................................ 31

SECTION 21.      MISCELLANEOUS ....................................................................................... 32

(a)          Notices ...................................................................................................... 32
(b)          Counterparts .............................................................................................. 32
(c)          Amendments .............................................................................................. 33
(d)          Agreement of Equipment Lease ................................................................ 33
(e)          Governing Law .......................................................................................... 33
(f)          Benefit and Binding Effect ....................................................................... 33
(g)          Service of Process and Jurisdiction; Waiver of Immunity ....................... 33

*Page*

|  |  |  |
|---|---|---|
| (h) | Severability | 34 |
| (i) | Irrevocable License | 34 |
| (j) | Entire Agreement | 34 |
| (k) | Currency | 34 |
| (l) | Precautionary Grant of Security Interest | 34 |

| | | |
|---|---|---|
| SECTION 22. | LIABILITY OF THE LESSOR LIMITED | 35 |

EXHIBITS

| | | |
|---|---|---|
| Exhibit A to Equipment Lease | – | Description of Equipment and Site |
| Exhibit B to Equipment Lease | – | Equipment Lease Rent Payment Schedule |
| Exhibit C to Equipment Lease | – | Termination Values |

This EQUIPMENT LEASE AGREEMENT (Qimonda Leasing Trust 2007), dated as of September 28, 2007 (this "*Equipment Lease*"), is between WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, a national banking association, not in its individual capacity but solely as owner trustee (in such capacity, the "*Owner Trustee*") under the Trust Agreement, as Lessor (the "*Lessor*"), and QIMONDA RICHMOND, LLC, a limited liability company organized and existing under the laws of the State of Delaware, as Lessee (the "*Lessee*").

RECITALS

WHEREAS, the Lessee desires to lease from the Lessor and the Lessor is willing to lease to the Lessee the Equipment upon, and subject to, the terms and conditions of this Equipment Lease.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, receipt of which is hereby acknowledged, the Lessor and the Lessee agree as follows:

SECTION 1.      INTERPRETATION, DEFINITIONS AND RULES OF USAGE.

Capitalized terms used and not otherwise defined herein shall have the meanings given such terms in Appendix A to the Participation Agreement (Qimonda Leasing Trust 2007) (the "*Participation Agreement*"), dated as of the Closing Date, among the Lessor, the Lessee, the Owner Participant, the Loan Participants, Indenture Trustee and the Trust Company, not in its individual capacity except as expressly set forth therein, but solely as Owner Trustee, and the rules of usage set forth therein shall apply hereto.

SECTION 2.      LEASING OF EQUIPMENT.

Subject to the terms and conditions of the Participation Agreement, on the Closing Date the Lessor shall lease each Unit of Equipment to the Lessee, and the Lessee shall lease each Unit of Equipment from the Lessor, such leasing to be evidenced by the execution by the Lessor and the Lessee of this Equipment Lease. It is the intent of the parties to this Equipment Lease that this Equipment Lease will be a "true lease" and that the Lessor shall at all times be considered to be the owner and lessor of each Unit of Equipment and that the Lessee shall at all times be considered to be the lessee of each Unit of Equipment for all United States federal, state and local income tax purposes.

SECTION 3.      EQUIPMENT LEASE TERM, RENT AND OTHER PAYMENTS.

(a)      *Equipment Lease Term.*

Unless earlier terminated in accordance with the express provisions hereof, the Equipment shall be leased for the Equipment Lease Term.

(b)     *Equipment Lease Rent.*

The Lessee shall pay or cause to be paid Equipment Lease Rent to the Lessor with respect to each Unit of Equipment on each Rent Payment Date during the Equipment Lease Term in an amount equal to the product of the Equipment Cost for such Unit multiplied by the Rent percentage for such Unit set forth opposite such Rent Payment Date under the caption "Equipment Lease Rent" on Exhibit B of the Equipment Lease.

(c)     *Supplemental Rent.*

The Lessee shall also pay to the Lessor, or to the Person entitled thereto, all Supplemental Rent promptly as the same shall become due, and in the event of any failure on the part of the Lessee to pay any Supplemental Rent when due and owing in accordance with the provisions of the Operative Documents, the Person entitled thereto shall have all rights, powers and remedies provided for herein or in any other Operative Document or by law or equity in the case of nonpayment of Equipment Lease Rent.   The Lessee shall also pay as Supplemental Rent (i) interest at the Overdue Rate on any Equipment Lease Rent or Supplemental Rent not paid when due for any period for which the same shall be overdue and (ii) all amounts equal to all amounts the Owner Trustee is obligated to pay under the Indenture, other than payments of principal and interest on the Notes, when and as the same become due thereunder, including any Make-Whole Amounts, if any, other than any Make-Whole Amounts due pursuant to Section 2.04(b) of the Indenture.

(d)     *Manner of Payment.*

All Equipment Lease Rent and Supplemental Rent (other than Excepted Payments) shall be paid by the Lessee to the Lessor by wire or electronic transfer to its account as set forth in Schedule I to the Participation Agreement, or to such other address or account as the Lessor shall specify, in immediately available funds, so that the Lessor receives the full amount of such payment no later than 1:00 p.m. (New York time) on the due dates thereof; *provided, however,* that so long as the Lien of the Indenture shall not have been discharged pursuant to Section 10.01 thereof, the Lessor hereby directs, and the Lessee agrees, that all Equipment Lease Rent and Supplemental Rent (other than Excepted Payments) shall be paid by wire transfer directly to the Indenture Trustee at its account set forth in Schedule I to the Participation Agreement, or as the Indenture Trustee may otherwise direct in a written notice received by the Lessee at least 10 days prior to the applicable payment date.  If any Equipment Lease Rent or Supplemental Rent is due on a day which is not a Business Day, such Equipment Lease Rent or Supplemental Rent shall be paid on the next succeeding Business Day with the same effect as if paid on the date when due and without additional interest.  Payments constituting Excepted Payments shall be made to the Person entitled thereto at the address for such Person given in Schedule I to the Participation Agreement or as may otherwise be specified by such Person to the Lessee.  All obligations of the Lessee in this Equipment Lease shall be done, performed or complied with at the Lessee's sole cost and expense unless otherwise expressly provided herein.

(e)    *Minimum Rent.*

Anything contained herein or in any other Operative Document to the contrary notwithstanding, (a) each installment of Equipment Lease Rent (not including Excepted Payments) shall be in an amount which is at least equal to the aggregate amount of all principal and interest payable on the Notes on the date of such installment without acceleration and (b) the Termination Value (not including Excepted Payments), together with any Rent payable on or prior to such date (excluding Excepted Payments), shall be in an amount at least equal to, as of the date of payment thereof, the aggregate outstanding unpaid principal of the Notes payable or prepayable on such date, together with accrued and unpaid interest thereon to such date and Make-Whole Amount, if any.  It is agreed that no installment of Equipment Lease Rent or Termination Value shall be accelerated, increased or adjusted by reason of (i) any attachment or diversion of Equipment Lease Rent on account of Lessor's Liens, (ii) any modification of the payment terms of the Notes made without the prior written consent of the Lessee (other than as expressly permitted by the Operative Documents), or (iii) the acceleration of any Note due to the occurrence of an Indenture Event of Default not caused by or attributable to an Event of Default.

SECTION 4.    NET EQUIPMENT LEASE, ETC.

This Equipment Lease is a net lease.  The Lessor shall have no obligation, liability or responsibility to the Lessee or any other Person with respect to operation, maintenance, repairs, alterations, modifications, improvements, correction of faults or defects (whether or not required by Applicable Law) or insurance with respect to the Equipment, any Unit or any part or component thereof during the Equipment Lease Term, all of which matters shall be, as between the Lessor and the Lessee, the sole responsibility of upon whom such responsibilities may fall under Applicable Law or otherwise, and the Equipment Lease Rent has been set in reliance upon the Lessee's sole responsibility for all such matters and things.  The Lessee acknowledges and agrees that its obligations to pay all Equipment Lease Rent and Supplemental Rent due and owing in accordance with the terms hereof shall be absolute and unconditional and shall not be released, discharged or otherwise affected by any circumstance whatsoever, including, without limitation, (a) any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Owner Participant, the Indenture Trustee, the Loan Participants or any other Person for any reason whatsoever, (b) any defect in the title, condition, design, operation or fitness for use of, or any damage to or loss or theft or destruction of, the Equipment, any Unit or the Site or any portion thereof, or any interference, interruption or cessation in or prohibition of the use or possession thereof by the Lessee or any other Person for any reason whatsoever, including any such interference, interruption, cessation or prohibition resulting from the act of any Governmental Authority, (c) any Liens or rights of any Person with respect to the Equipment, any Unit or Site, (d) the termination, invalidity or unenforceability or lack of due authorization or other infirmity of or defect in the Bill of Sale, this Equipment Lease or any other Operative Document or any lack of right, power or authority of the Lessor or the Lessee to enter into this Equipment Lease or any document, instrument or agreement related thereto or any other Operative Document or of the Lessee and Lessor to enter into the Bill of Sale, (e) any insolvency, bankruptcy, reorganization or similar proceedings by or against the Lessee or any other Person, (f) the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of

- 3 -

sovereignty or otherwise, (g) the occurrence or existence of any force majeure event or exercise of police power, or (h) any other occurrence (including, without limitation, the imposition of personal property taxes), event or other cause whether similar or dissimilar to the foregoing, any present or future law notwithstanding, it being the intention of the parties hereto that all Equipment Lease Rent and Supplemental Rent payable by the Lessee hereunder shall continue to be payable in all events in the manner and at the times provided herein. Such Equipment Lease Rent and Supplemental Rent shall not be subject to any abatement and the payments thereof shall not be subject to any setoff, suspension, determent, diminution or reduction for any reason whatsoever, including any present or future claims of the Lessee against the Lessor or any other Person under this Equipment Lease or otherwise. If for any reason whatsoever this Equipment Lease shall be terminated in whole or in part by operation of law or otherwise except as specifically provided herein, the Lessee nonetheless agrees to pay to the Lessor or to the Indenture Trustee, as the case may be, an amount equal to each Equipment Lease Rent payment and Supplemental Rent payment under Section 3 at the time such payment would have become due and payable in accordance with the terms hereof had this Equipment Lease not been terminated in whole or in part.

The Lessee hereby waives, to the extent permitted by Applicable Law, any and all rights which may have been conferred upon it, by statute or otherwise, to terminate, cancel, quit or surrender this Equipment Lease except in accordance with the express terms hereof (including Sections 9 and 14). Notwithstanding any other provision of this Section 4 to the contrary, the Lessee shall not be impaired in the exercise of any right it may have to assert and sue upon any claim it may have against the Lessor, the Owner Participant or any other Person in a separate action.

SECTION 5.       REPRESENTATIONS, WARRANTIES AND AGREEMENTS.

(a)       THE LESSOR LEASES AND THE LESSEE TAKES THE EQUIPMENT, EACH UNIT AND EACH PART THEREOF "AS-IS" AND "WHERE-IS", AND NONE OF THE LESSOR, THE OWNER TRUSTEE, THE TRUST COMPANY, THE INDENTURE TRUSTEE, THE LOAN PARTICIPANTS OR THE OWNER PARTICIPANT MAKES OR SHALL BE DEEMED TO HAVE MADE ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONDITION, VALUE, WORKMANSHIP, DESIGN, OPERATION, COMPLIANCE WITH SPECIFICATIONS, CONSTRUCTION, PERFORMANCE OR MERCHANTABILITY, FITNESS OR SUITABILITY FOR USE OR PURPOSE OF THE EQUIPMENT, ANY UNIT OR ANY PART THEREOF, AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT, AS TO THE ABSENCE OF OBLIGATIONS BASED ON STRICT LIABILITY IN TORT, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE EQUIPMENT, ANY UNIT OR ANY PART THEREOF OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT, ANY UNIT OR ANY PART THEREOF, AND NONE OF THE LESSOR, THE TRUST COMPANY, THE OWNER TRUSTEE, THE INDENTURE TRUSTEE, THE HOLDERS OR THE OWNER PARTICIPANT SHALL BE DEEMED TO HAVE MADE ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE TITLE OF THE EQUIPMENT, ANY UNIT OR ANY PART THEREOF.

(b)       The Lessor covenants that during the Equipment Lease Term, so long as no Event of Default shall have occurred and be continuing, the Lessee's rights under this Equipment

- 4 -

Lease, including the possession, use and quiet enjoyment of the Equipment, shall not be interrupted by the Lessor or any Person claiming any interest in the Equipment by, through or under the Lessor (it being agreed that the Lessor's covenant hereunder does not extend to actions taken by the Indenture Trustee or the Loan Participants).

(c)   (i)   If and so long as a remedy pursuant to Section 16 hereof has not been exercised by Lessor resulting in the loss of possession by Lessee of a Unit and so long as such Unit remains subject to this Lease, (A) Lessee, and any sublessee so authorized by Lessee, to the exclusion of Lessor, may exercise in Lessee's or such sublessee's own name (1) all rights with respect to such Unit under any warranty, covenant, representation, service life policy, performance guarantee, indemnity or product support agreement of any manufacturer or any subcontractor or vendor with respect thereto under each purchase agreement with respect to such Unit and, subject to subparagraphs (ii) and (iii) of this Section 5(c), may retain any warranty, covenant, representation, service life policy, performance guarantee, indemnity or product support agreement of each manufacturer or any subcontractor or vendor under each such purchase agreement and (2) all other rights and powers under each such purchase agreement and (B) Lessor shall, at Lessee's (or any sublessee's) expense, cooperate with Lessee (or any sublessee) and take such actions as Lessee (or any sublessee) reasonably deems necessary to enable Lessee (or any sublessee) to enforce such rights and claims;

(ii)   Notwithstanding anything herein to the contrary, Lessee shall cause all amounts that each manufacturer is obligated to pay to Lessee under each such purchase agreement, including, without limitation, resulting from the enforcement of any warranty, covenant, representation, service life policy, performance guarantee or indemnity thereunder or the enforcement or exercise of any right or power under such purchase agreement, to be paid to Lessee unless a remedy pursuant to Section 16 has been exercised by Lessor, in which case each manufacturer shall be instructed by Lessee to make any and all such payments directly to Lessor (or, if the Lien of the Indenture has not been discharged pursuant to the terms thereof, the Indenture Trustee);

(iii)   Lessor agrees that, as and when any right of action shall arise against any manufacturer in relation to the terms of purchase, value, durability, merchantability, fitness for use, suitability, capacity, age, quality, description, state, condition, design, construction, use, operation or performance of, or any patent infringement or alleged patent infringement in relation to, any Unit or any part thereof, Lessee shall be entitled, unless and so long as a remedy pursuant to Section 16 has been exercised by Lessor resulting in the loss of possession by Lessee of such Unit, at its own expense to exercise all rights of Lessor and Lessee against such manufacturer; and

(iv)   Lessee agrees that, at all times during the Equipment Lease Term, it will, at its sole cost and expense, (x) pursue diligently all rights that it or Lessor may have with respect to each Unit as set forth in clauses (i), (ii) and (iii) above and at any time when a remedy pursuant to Section 16 has been exercised by Lessor resulting in the loss of possession by Lessee of any Unit, promptly upon notice from Lessor (or, if the Lien of the Indenture has not been discharged pursuant to the terms thereof, the Indenture Trustee) execute and deliver an assignment to Lessor, of all its right, title and interest in

- 5 -

and to any warranty, covenant, representation, service life policy, performance guarantee, indemnity or product support agreement of any manufacturer or any subcontractor or vendor with respect thereto under each purchase agreement, and shall make commercially reasonable efforts to cause each manufacturer to execute and deliver to Lessor and the Indenture Trustee an acknowledgement of such assignment, each such assignment and acknowledgement to be in form and substance reasonably satisfactory to Lessor and the Indenture Trustee.

SECTION 6.        POSSESSION, OPERATION AND USE, MAINTENANCE AND IDENTIFICATION.

(a)        *Possession and Subleasing.*

The Lessee shall not sublease or otherwise in any manner deliver, relinquish or transfer possession of, or permit any other Person to deliver, relinquish or transfer possession of, the Equipment or any Unit to any other Person during the Equipment Lease Term without the prior written consent of the Lessor and the Loan Participants; *provided, however*, that the Lessee may, with the prior written consent of the Lessor and Loan Participants, so long as no Event of Default shall have occurred and be continuing (with respect to clauses (i) and (ii) below):

(i)        sublease the Equipment, but not an individual Unit, for a period not extending beyond the end of the Equipment Lease Term (unless the Lessee has delivered the irrevocable written notice pursuant to and in accordance with Section 14 that it has elected to exercise the End of Term Purchase Option to the Lessor, the Loan Participants and the Indenture Trustee) which may be earlier terminated by the Lessee, without the incurrence of any costs or the giving of more than thirty days' notice by the Lessee, to any Affiliate of the Guarantor organized under the laws of the United States or any State thereof which is not the subject of any bankruptcy, insolvency or similar proceeding, but only if such sublease does not impair any of the Lessor's rights and remedies (including repossessory remedies) hereunder increase the obligations of the Lessor hereunder or decrease the benefits of the Lessor hereunder, in each case in the reasonable opinion of the Lessor; or

(ii)        deliver temporary possession of any Unit or Part thereof for testing, service, repair, maintenance or overhaul work on such Unit or Part thereof or for alterations or modifications in or additions to such Unit or Part of the Equipment to the extent required or permitted by the terms of this Equipment Lease;

*provided, further,* that, upon any exercise of the Lessee's rights under this Section 6(a), (A) the obligations of the Lessee under this Equipment Lease and all of the other Operative Documents and the obligations of the Guarantor under the Guaranty and all other Operative Documents shall continue in full force and effect notwithstanding any such sublease or delivery of temporary possession, (B) the rights of any sublessee pursuant to clause (i) above or Person in possession of such Unit or Part pursuant to clause (ii) above shall be expressly subject and subordinate to all the terms of this Equipment Lease and the other Operative Documents, (C) such sublease shall not contain any purchase options, (D) the insurance provided pursuant to Section 10 hereof insures the operation of the Equipment by such sublessee and (E) the sublessee shall not be a

- 6 -

governmental entity unless (1) such governmental entity shall have waived its right of sovereign immunity in a manner satisfactory to the Participants or (2) the Lessee shall have delivered to the Lessor, the Owner Participant, the Indenture Trustee and the Loan Participants an opinion of counsel, in form and substance satisfactory to such Persons, to the effect that such governmental entity is not entitled to assert a defense of sovereign immunity.  No sublease of the Equipment or any portion thereof or other relinquishment of possession of any Unit or Part thereof shall in any way discharge or diminish the Lessee's obligations hereunder or the Guarantor's obligations under the Guaranty or constitute a waiver of, or inhibit in any way, the Lessor's rights or remedies hereunder or under the Guaranty, and the Lessee shall remain primarily liable hereunder for the performance of all the terms of this Equipment Lease and the other Operative Documents and the Guarantor shall remain primarily liable under the Guaranty for the performance of all of the terms of the Guaranty and other Operative Documents as if such transfer had not occurred and all the terms and conditions of this Equipment Lease, the Guaranty and the other applicable Operative Documents shall remain in full force and effect.  No sublessee shall have the right to further sublease the Equipment or any Unit thereof or be given an option to purchase the Equipment.  In the case of a proposed sublease (whether pursuant to clause (i) or otherwise), the Lessee shall give the Lessor, the Owner Participant, the Loan Participants and the Indenture Trustee 30 days' prior written notice (which notice shall identify the proposed sublessee) of any sublease, together with a copy of a term sheet or other document identifying in reasonable detail the terms and conditions of such proposed sublease.  In the case of a proposed sublease (whether pursuant to clause (i) or otherwise), the Lessee shall also deliver executed originals of such agreements to the Lessor and Indenture Trustee no later than 30 days after consummation of such subleasing.  The indemnity contained in the foregoing sentence shall survive the expiration or other termination of this Equipment Lease.  Any reference in this Equipment Lease to a "permitted sublessee" shall mean a sublessee under a sublease permitted by this Section 6(a).

(b)     *Operation and Use.*

The Lessee shall, at its sole cost and expense, cause the Equipment to be used and operated on the Site in the Commonwealth of Virginia and shall not use or operate or suffer or permit the Equipment, any Unit or any Part thereof (i) to be used or operated in violation of any Applicable Law (including Environmental Laws) or Prudent Industry Practice, (ii) in a manner excluded from coverage by any insurance required pursuant to Section 10, (iii) for any purpose for which it is not designed or reasonably suited, or (iv) in material violation of any permit or other license, authorization, permit or registration relating to the Equipment, any Unit or any Part thereof issued by any competent Governmental Authority (it being agreed that any such violation of any Applicable Law, permit, license, authorization, permit or registration shall not be a breach of the Lessee's obligations hereunder so long as the Lessee shall be diligently contesting the application of such Applicable Law, permit, license, authorization, permit or registration unless such violation adversely affects the Lessor's or any Participant's interest in the Equipment or access to the Equipment or the existence or priority of the Lien of the Indenture or involves any risk of the imposition of criminal liability or unindemnified civil liability on the Lessor or any Participant or any risk of the sale, forfeiture or loss of the Property, the Equipment or any Part thereof).  For the avoidance of doubt, nothing in the provisions set forth in this Section 6(b) shall preclude the Lessee from contesting Liens in accordance with Section 11.

(c)     *Maintenance.*

The Lessee, at its sole cost and expense, shall cause each Unit to be serviced, repaired, maintained, overhauled and tested during the Equipment Lease Term (i) in accordance with current Prudent Industry Practice, but with at least the same standard of care that the Lessee exercises in servicing, repairing, maintaining, overhauling and testing similar facilities or equipment owned, operated, leased or subleased by it or its Affiliates, (ii) in compliance with all Applicable Laws, any insurance policies required to be maintained in accordance with Section 10 with respect to such Unit and, with respect to any Part, any applicable manufacturer's warranties relating to any Part of such Unit, and (iii) so as to keep such Unit in good operating order, repair and condition and, subject to Section 8(c), in the same condition as when delivered to the Lessee and in such condition so that it would have the capability and functional ability to perform on a continuing basis, ordinary wear and tear excepted; *provided*, that the Lessee may, after written notice to the Lessor stating the facts with respect thereto, at its own expense in good faith contest, through appropriate proceedings, the validity or application of any such Applicable Law in any reasonable manner which does not adversely affect the Lessor's or any Participant's interest in such Unit or access to the Equipment, or the existence or priority of the Lien of the Indenture or any mandatory provision of any insurance policy required to be carried pursuant to Section 10 and does not involve any risk of the imposition of criminal liability or civil liability (whether or not indemnified) that would result in willful misconduct or gross negligence being attributed or imputed to the Lessor or any Participant or any unindemnified civil liability on the Lessor or any Participant or any risk of the sale, forfeiture or loss of access to the Equipment, such Unit or any Part thereof.  The Lessee shall maintain or cause to be maintained all records, logs and other materials required to be maintained by any applicable Governmental Authority, Applicable Law or by Prudent Industry Practice in respect of each Unit.

The Lessee shall maintain or cause to be maintained all records, logs and other materials required to be maintained by such manufacturer or vendor in connection with the preservation of warranties or by any applicable Governmental Authority, by Applicable Law, or by the Lessee's then current maintenance programs and practices in respect of each Unit and to the same extent such materials are maintained in connection with the maintenance of similar assets. Such records, logs and other materials shall be kept on file by the Lessee at the Lessee's offices or such other location as the Lessee may designate from time to time.  Upon the expiration or earlier termination of this Equipment Lease and return of a Unit to the Lessor in accordance with the terms of this Equipment Lease, copies of such records, logs and other materials shall be made available to the Lessor at such offices or location in connection with any inspection pursuant to, and subject to the provisions of, Section 7; *provided, however*, that so long as no Event of Default shall have occurred and be continuing, such reports and logs may be destroyed in accordance with the Lessee's normal document retention program applicable to such Unit but in no event prior to two years after the date of such reports and logs, except that all such reports and logs generated during the two-year period immediately preceding the Equipment Lease Expiration Date shall be retained and, upon the expiration or earlier termination of the Equipment Lease in circumstances in which the Lessee has not purchased the Equipment, delivered to the Lessor upon such expiration or earlier termination.

The Lessee shall prepare (or cause to be prepared) and, to the extent necessary under Applicable Law, file in a timely fashion, or if the Lessor shall be required to file, the Lessee shall furnish to the Lessor within a reasonable time prior to the date for filing, all reports with respect to any Unit, or the condition or operation thereof, that shall be required to be filed with any Governmental Authority.

Upon a written request which sets forth a detailed explanation of the need for the information requested, the Lessee shall furnish the Lessor with any reports reasonably requested by the Lessor to the extent such reports relate to any Unit and can be compiled from information which is reasonably available to the Lessee.

(d)     *Casualty not Constituting an Event of Loss.*

Subject to Section 6(c), if the Equipment, any Unit or any Part thereof shall suffer any damage or casualty which does not constitute an Event of Loss, the Lessee shall at its own cost and expense, as soon as commercially practicable, repair, restore or rebuild the damaged or destroyed property so that upon the completion of such repair, restoration or rebuilding, the value (then current value and anticipated value as of the Equipment Lease Expiration Date) of the Equipment, such Unit or such Part thereof as repaired, restored or rebuilt and the utility and remaining useful life of the Equipment, such Unit or such Part thereof shall not be less than the value (then current value and anticipated value as of the Equipment Lease Expiration Date), utility and remaining useful life of the Equipment, such Unit or such Part thereof immediately prior to such damage or destruction (except by a *de minimis* amount), assuming the Equipment, such Unit or such Part thereof was maintained in accordance with the terms hereof.

(e)     *Authorizations.*

Lessee shall, at its own cost and expense, obtain or cause to be obtained, all Authorizations necessary for the use, ownership or operation of each Unit as contemplated hereby.  Lessee shall promptly notify the Lessor and the Indenture Trustee of any lapse or termination of effectiveness of, or its inability to obtain in the name of the Lessor when required, any such Authorizations.  Lessee shall furnish to the Lessor, on or before the 30th day after receipt thereof, a copy of any notice or order of any Governmental Authority asserting that the Lessee, the Equipment, any Unit or the Site or the respective interests of the Lessor and the Indenture Trustee therein, is not in compliance, in any material respect, with any law, rule, regulation or order of any Governmental Authority applicable to the Equipment, any Unit or the Site.

(f)     *Ownership.*

Lessee acknowledges and agrees that by the execution hereof it does not and will not have or obtain any title to the Equipment or any Unit or any property right or interest, legal or equitable, therein, (other than the option to purchase the Equipment pursuant to the terms of this Equipment Lease) except solely as the Lessee hereunder and subject to all the terms hereof. Lessor and the Lessee understand, acknowledge, and agree that the Equipment and each Unit are owned by, and shall remain the removable personal property of, the Lessor, subject to the Lien of

- 9 -

the Indenture, and shall not be or become fixtures, component parts or otherwise part of the real estate or real property comprising the Site.

(g)     *Marking.*

Lessee shall promptly, and in any event not later than 60 days from the Closing Date, cause markers or signs to be plainly, permanently and conspicuously placed on the Equipment and each Unit setting forth the following legend:

> "THE EQUIPMENT AND EACH UNIT IS OWNED BY WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE AND THE EQUIPMENT AND EACH UNIT IS LEASED BY OWNER TRUSTEE TO QIMONDA RICHMOND, LLC, AND IS SUBJECT TO AN INDENTURE AND SECURITY AGREEMENT GRANTED TO BANK OF UTAH, AS INDENTURE TRUSTEE. A DETAILED LIST OF THE EQUIPMENT AND EACH UNIT OWNED BY OWNER TRUSTEE MAY BE OBTAINED FROM THE ON-SITE ADMINISTRATIVE OFFICE."

Lessee covenants and agrees to replace any marker or sign that may be removed or destroyed or become illegible.

(h)     *Equipment as Personal Property.*

It is the intent of the parties hereto that the Equipment and each Unit shall be and remain personal property notwithstanding the manner in which the Equipment or any Unit may be attached or affixed to realty. Lessor shall not be liable for any damage caused to the realty or any building by the removal of the Equipment or any Unit in accordance with Sections 13, 14 and 16 except as a result of the gross negligence or willful misconduct of the Lessor. In the event that, notwithstanding the foregoing, a court of competent jurisdiction shall make a final determination that some part or portion of the Equipment or any Unit constitutes real property under Applicable Law, then this Equipment Lease shall be deemed to be and shall be construed as a divisible and severable contract between the Lessor and the Lessee for the leasing of, respectively, (i) the part or portion of the Equipment or such Unit so determined to constitute real property under Applicable Law and (ii) the remainder of the Equipment and each Unit, all to the same extent and with the same force and effect as though a separate lease had been entered into, by the Lessor and the Lessee in respect of each of the part or portion of the Equipment or such Unit so determined to constitute real property and the remainder of the Equipment and such Unit. The Rent payable in respect of the part or portion of the Equipment or Unit so determined to constitute real property for the remaining Equipment Lease Term shall equal $10.00, which shall be paid out of the payment of Equipment Lease Rent next succeeding the date of such determination. All other Equipment Lease Rent shall be payable in respect of such part or portion of the Equipment and such Unit that is not so determined to constitute real property.

SECTION 7.     INSPECTION.

Each of the Lessor, the Indenture Trustee and the Loan Participants, or their authorized representatives (which includes the Owner Participant), may, but are not required to, on reasonable notice inspect the Equipment and the books and records of the Lessee relating thereto and may make copies of those parts of such books as the Lessor, the Indenture Trustee, any Loan Participant or any authorized representative may reasonably request; *provided*, that unless an Event of Default shall have occurred and be continuing or unless the Lessee has not elected to exercise the End of Term Purchase Option in accordance with Section 14(a), inspections shall occur only once in any twelve-month period and shall not take place without an appropriate Lessee representative present. All such inspections of the Property shall be visual, walk-around inspections, unless an Event of Default shall have occurred and be continuing or the Lessee has not delivered the irrevocable written notice pursuant to and in accordance with Section 14(a), and in any event, shall be conducted, so long as there is no Event of Default which is continuing, so as not to unreasonably interfere with the normal conduct of Lessee's or any permitted sublessee's business or the operation and maintenance of the Equipment (except to the extent necessitated by the inspection process, including the dedication thereto of appropriate personnel of the Lessee). Unless an Event of Default shall have occurred and be continuing, any inspection or observation made pursuant to this Section 7 shall be at the sole expense and risk of the Lessor, the Indenture Trustee or the Loan Participants, as applicable. Neither the Lessor, the Indenture Trustee nor the Loan Participants shall have any duty to make any such inspection or incur any liability or obligation by reason of not making any such inspection. The Lessee shall make any permitted sublease of the Equipment expressly subject to the inspection rights hereunder.

SECTION 8.     REPLACEMENT AND OWNERSHIP OF PARTS; ALTERATIONS, MODIFICATIONS, ADDITIONS AND REPLACEMENTS.

(a)     *Replacement of Parts.*

The Lessee, at its sole cost and expense, shall, during the Equipment Lease Term, promptly replace, or cause any permitted sublessee to replace, all Parts that may, from time to time become worn out, obsolete, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever; *provided*, that with respect to obsolete Parts, the Lessee shall be obligated to replace such Part only to the extent required to operate a Unit as 200 millimeter semiconductor manufacturing equipment in accordance with Applicable Law and Prudent Industry Practice and so long as such failure to replace shall not, diminish the value or utility of any Unit or change the nature of such Unit from that which it was designed as of the Closing Date as the same may have been modified in accordance with this Equipment Lease. In addition, in the course of maintenance, service, repair, overhaul or testing, the Lessee or a permitted sublessee, at its sole cost and expense, may remove any Part, whether or not worn out, obsolete, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use; *provided*, that the Lessee or such permitted sublessee, at its sole cost and expense, shall replace such Parts as promptly as practicable with replacement Parts or temporary replacement parts as provided in Section 8(c). All replacement Parts shall be free and clear of all Liens except Permitted Liens and shall be in as good operating condition as, and shall have a value and utility at least equal to, the Parts replaced assuming such

- 11 -

replaced Parts were in the condition and repair required by the terms hereof.  In addition, no replacement of any Part pursuant to this Section 8(a), whether permanent or temporary, shall diminish the value, utility or change the nature of such Unit from that which it was designed as of the Closing Date as the same may have been modified in accordance with this Equipment Lease through the date of such replacement.

      (b)    *Ownership of Parts.*

Any Part (except for a temporary replacement Part) at any time removed from a Unit shall remain the property of the Lessor and subject to this Equipment Lease, no matter where located, until such time as such Part shall be replaced by a part or parts that have been incorporated or installed in or attached to such Unit and that meets the requirements for replacement Parts specified in Section 8(a).  Immediately upon any replacement Part (except for a temporary replacement Part) becoming incorporated or installed in or attached to such Unit as provided in Section 8(a), without further act, (i) title to the replaced part shall thereupon vest in the Lessee or its designee, free and clear of all rights of the Lessor, the Indenture Trustee and the Loan Participants and the replaced Part shall no longer be deemed a Part hereunder; (ii) title to such replacement Part shall thereupon vest in the Lessor; and (iii) such replacement Part shall become subject to this Equipment Lease and be deemed part of such Unit for all purposes hereof to the same extent as the Parts originally incorporated or installed in or attached to such Unit.

      (c)    *Alterations, Modifications and Additions.*

The Lessee or any permitted sublessee, as the case may be, at its sole cost and expense, shall make or cause to be made such alterations and modifications in and additions to a Unit and any Part thereof or other improvements not forming part of such Unit located on, above, under or otherwise attached to such Unit, as may be required from time to time by Applicable Law; *provided*, that the Lessee or such permitted sublessee may in good faith contest, through appropriate proceedings, the validity or application of any such requirements in any reasonable manner which does not adversely affect the Lessor's or any Participant's access to the Equipment or interest in such Unit or the existence or priority of the Lien of the Indenture or any mandatory provision of any insurance policy required to be carried pursuant to Section 10 and does not involve any risk of the imposition of criminal liability or civil liability (whether or not indemnified) that would result in willful misconduct or gross negligence being attributed or imputed to the Lessor or any Participant or any unindemnified civil liability on the Lessor or any Participant or any risk of the sale, forfeiture or loss of the Equipment, such Unit, or any Part thereof, or access to the Equipment.  In addition, the Lessee or any permitted sublessee, as the case may be, at its sole cost and expense, may from time to time make such alterations and modifications in, and additions to, a Unit and any Part thereof or other improvements not forming part of such Unit located on, above, under or otherwise attached to such Unit, as the Lessee or such permitted sublessee reasonably may deem desirable, including removal (without replacement) of Parts which the Lessee or such permitted sublessee deems obsolete or no longer appropriate or suitable for use with respect to such Unit; *provided*, that such alterations, modifications, additions or removals or other improvements not forming part of such Unit located on, above, under or otherwise attached to such Unit do not impair the normal operation or, in the reasonable determination of the Participants, diminish the value or utility of such Unit.

Title to any severable Part not required by Applicable Law to be incorporated or installed in, or attached or added to, a Unit as the result of such alteration, modification, removal or addition shall remain in the Lessee or such permitted sublessee, as the case may be, and may be removed at any time during the Equipment Lease Term; *provided*, that (i) such Part is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached or added to such Unit at the time of the delivery thereof hereunder or any Part in replacement of, or substitution for, any such Part, (ii) such Part is not otherwise required to be incorporated or installed in or attached to such Unit pursuant to the terms hereof, (iii) such Part can be removed from such Unit without damage and without diminishing the value or utility of such Unit, which such Unit would have had at such time had such alteration, modification, removal or addition not occurred, assuming such Unit was maintained in the condition required by the terms of this Equipment Lease, (iv) no Event of Default shall have occurred and be continuing, and (v) the cost of such Part was not paid or financed by the Lessor or the Owner Participant (a "*Severable Part*"). Title to all other such Parts shall, without further act or payment, vest in the Lessee and shall be subject to this Equipment Lease.

Notwithstanding anything herein to the contrary, the Lessee shall not make any alteration, modification or addition to a Unit that would change the nature or use or character of such Unit.

SECTION 9.       EVENT OF LOSS; REPLACEMENT.

(a)       *Event of Loss.*

Upon the occurrence of an Event of Loss with respect to a Unit or Units with an aggregate Equipment Cost in excess of $3,000,000, the Lessee shall notify the Lessor, the Owner Participant, the Indenture Trustee and the Loan Participants that an Event of Loss has occurred within 30 days of the occurrence thereof (such notice to identify the nature of such Event of Loss), and by written notice to the Lessor, the Owner Participant and the Indenture Trustee given within 90 days after the occurrence of such Event of Loss but in no event later than the end of the Equipment Lease Term (the "*Election Notice*") elect one of the following two alternatives (provided that if the Lessee shall fail to give such notice or the Owner Participant shall fail to give consent to alternative (ii), the Lessee shall be deemed to have elected alternative (i)):

(i)       the Lessee shall pay to the Lessor on the first Termination Value Determination Date occurring after the Lessee delivers (or is required to deliver) the Election Notice, but in any event no later than 180 days after the occurrence of such Event of Loss and in no event later than the end of the Equipment Lease Term (the "*Loss Payment Date*"): (A) the Termination Value for the Loss Payment Date, plus (B) any overdue Equipment Lease Rent that was due and payable prior to such Loss Payment Date remaining unpaid, together with interest at the Overdue Rate for the period from the due date thereof to the date of payment, plus (C) all Supplemental Rent due and owing, on or before the Loss Payment Date by the Lessee to the Lessor or any other Person under the Operative Documents; or

(ii)       provided no Equipment Lease Major Default or Event of Default shall have occurred and be continuing at the time of the replacement, the Lessee shall rebuild

- 13 -

or repair a Unit within 180 days after the occurrence of such Event of Loss, but in no event later than the end of the Equipment Lease Term, with a replacement unit of the same nature and with a value, utility and functional nature at least equal to, and as good operating condition as, such Unit (assuming such Unit had not suffered an Event of Loss and was in the condition and repair required by the terms of this Equipment Lease), free and clear of all Liens except Permitted Liens described in clauses (a), (b), (c) and (d) of Section 11 (provided that with respect to clauses (c) and (d), the Lessee shall describe with particularity all contests to the Lessor) and capable of being used by the Lessor or another third party other than the Lessee upon its return in accordance with the provisions hereof (the "*Replacement Unit*").

A replacement and/or repair pursuant to clause (ii) above shall be subject to the condition that the following documents shall have been duly authorized, executed and delivered by the Lessee (and recorded or filed, if appropriate) and an executed counterpart of each shall be delivered to the Lessor and, if the Lien of the Indenture has not been discharged, the Indenture Trustee and the Loan Participants:

> (A)   as long as the Lien of the Indenture shall not have been discharged pursuant to Section 10.01 thereof, a supplement to the Indenture subjecting the Replacement Unit to the Lien thereof;

> (B)   evidence of compliance with the insurance provisions of Section 10 with respect to such Replacement Unit as the Lessor and Loan Participants may reasonably request;

> (C)   with respect to any Part of the Replacement Unit with respect to which any manufacturing and/or vendor contract restricts the Lessor's ability to transfer, lease or otherwise dispose of such Part as permitted hereunder or under any other Operative Document, a consent executed by the related manufacturer or vendor reasonably acceptable to the Lessor;

> (D)   such certificates, opinions of counsel and opinions of technical consultants (in each case, such counsel or consultant to be selected by the Owner Participant and to be reasonably satisfactory to the Lessee) as to such matters as the Owner Participant, the Indenture Trustee or the Loan Participants may reasonably request, including, but not limited to, the ownership of the Replacement Unit by the Lessor and the Lien of the Indenture;

> (E)   an appraisal or other evidence satisfactory to the Owner Participant to the effect that the Replacement Unit has a value, utility, and functional nature at least equal to that of the Unit being replaced (assuming the same was in the condition required by the Equipment Lease), is in the condition as required by Section 8(a), is free and clear of all Liens except Permitted Liens; and

> (F)   so long as the Lien of the Indenture shall not have been discharged, such UCC financing statements covering the Equipment Lease and the Lien of the

Indenture and any other filings or actions as are required by Applicable Law or as are deemed necessary or desirable by counsel for the Lessor or the Loan Participants to establish the interest of the Lessor and a first priority security interest of the Indenture Trustee for the benefit of the Loan Participants in the Replacement Unit.

Immediately upon the effectiveness of such repair or replacement and without further act, title to such Replacement Unit shall vest in the Lessor and the Replacement Unit shall become subject to this Equipment Lease and shall be deemed a Unit for all purposes hereof to the same extent as a Unit originally leased hereunder.

(iii)     If the Lessee has not fully performed the alternative described in clause (ii) of this paragraph (a) within 180 days following the occurrence of the Event of Loss, the Lessee shall be deemed to have elected the alternative described in clause (i) of this paragraph (a) and shall fully perform the same in accordance with the terms hereof.

Upon payment in full of all amounts payable pursuant to alternative (i) of this paragraph (a), (1) the obligation of the Lessee to pay any Equipment Lease Rent with respect to a Unit or Units suffering the Event of Loss shall terminate as of the Loss Payment Date, (2) the Equipment Lease Term shall end with respect to such Unit or Units and (3) the Lessor will transfer to the Lessee, "as-is, where-is" without recourse or warranty (except as to the absence of Lessor's Liens), all of such Unit or Units.  Upon such transfer, the Lessor shall request the Indenture Trustee to execute, or otherwise authenticate, and deliver to the Lessee an appropriate instrument releasing such Unit or Units from the Lien of the Indenture.  A replacement effected pursuant to alternative (ii) of this paragraph (a) shall not result in any adjustment to Equipment Lease Rent and shall not result in any change in Termination Values.

The Lessee shall pay the reasonable costs and expenses (including reasonable fees and expenses of counsel) of the Lessor, the Owner Participant, the Indenture Trustee and the Loan Participants incurred in connection with any such termination or replacement.

Notwithstanding anything to the contrary contained in this Section 9(a), the Lessee shall pay over all amounts due under Section 9(a)(i) upon the occurrence of an Equipment Lease Major Default, Event of Default or the Equipment Lease Expiration Date with regard to the aggregate Equipment Costs for such Unit or Units that are the subject of such Event of Loss or Events of Loss.

(b)     *Non-Insurance Payments Received on Account of an Event of Loss.*

As between the Lessor and the Lessee, any payments on account of an Event of Loss (other than proceeds of insurance which shall be applied as required by Sections 10(c) and (g)) with respect to a Unit received at any time by the Lessor, the Lessee or any permitted sublessee or any other Person from any Governmental Authority or other Person will be applied as follows:

(i)     if the Lessee has elected (or is deemed to have elected) the alternative described in clause (i) of paragraph (a) of this Section 9, so much of such payments as

- 15 -

shall not exceed the amounts required to be paid by the Lessee pursuant to such paragraph (a)(i) above shall be paid to the Lessor (or, if the Lien of the Indenture has not been discharged pursuant to Section 10.01 of the Indenture, the Indenture Trustee) and applied in reduction of the Lessee's obligations to pay such amounts if not previously paid (net of any and all costs, losses and expenses incurred by the Lessor in connection therewith) and the balance, or if all amounts required to be paid by paragraph (a)(i) above have been paid by the Lessee all such payments, shall be divided among the Lessor and the Lessee as their interests may appear; and

(ii)    if the Lessee has elected the alternative described in clause (ii) of paragraph (a) of this Section 9, all such payments shall be paid over to, or retained by, the Lessor (or, if the Lien of the Indenture has not been discharged pursuant to Section 10.01 of the Indenture, the Indenture Trustee), as security for the Lessee's obligations thereunder; *provided*, that so long as no Equipment Lease Major Default or Event of Default exists such payments shall be released to the Lessee upon request in order to permit the Lessee to perform its obligations under such alternative (ii) as and when necessary.

(c)    *Requisition for Use.*

(i)    If a Unit or any Part thereof is requisitioned for use by any Governmental Authority (for so long as such requisition does not constitute an Event of Loss, at which time Section 9(a) will govern), all of the Lessee's obligations under this Equipment Lease with respect to such Part shall continue to the same extent as if such requisition had not occurred.

(ii)    All payments received by the Lessor, the Lessee, any permitted sublessee or any other Person in connection with any such requisition for use during the Equipment Lease Term (other than any such requisition which constitutes an Event of Loss, as to which the provisions of Section 9(a) shall govern) or under a sublease or transfer then in effect from any Governmental Authority for the use of a Unit or any Part thereof during the Equipment Lease Term shall be paid over to, or retained by, the Lessee or such permitted sublessee, as the case may be. All payments received by the Lessor, the Lessee, such permitted sublessee or any other Person from any Governmental Authority for the use of a Unit or any Part after the Equipment Lease Term shall be paid over to, or retained by, the Lessor (unless the Lessee shall have exercised the End of Term Purchase Option and complied with the terms thereof, in which case all such payments shall be paid over to, or retained by, the Lessee).

(d)    *Event of Loss at End of Equipment Lease Term.*

If an Event of Loss shall exist, or be deemed to exist, on the last day of the Equipment Lease Term (and the Lessee shall not have exercised the End of Term Purchase Option), the Lessee shall make the payments required to be made by it under alternative (i) of Section 9(a) with respect to such Event of Loss on such date.

(e)     *Application of Payments During Existence of Defaults.*

Any amount referred to in this Section 9 or in Section 10 which is payable to the Lessor or the Lessee shall not be paid to the Lessee, or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment an Equipment Lease Major Default or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Lessor (or, if the Lien of the Indenture has not been discharged pursuant to Section 10.01 of the Indenture, the Indenture Trustee) as security for the Lessee's Obligations, and shall be applied towards payment of the Lessee's Obligations, and at such time as there shall not be continuing any such Equipment Lease Major Default or Event of Default such amount (to the extent not so applied) shall be paid over to the Lessee, as the case may be, or its designee.

SECTION 10.     INSURANCE.

(a)     *Property and Liability Insurance.*

The Lessee will at all times carry and maintain, or cause to be carried and maintained, with nationally recognized insurance companies eligible to do business in the Commonwealth of Virginia and reasonably acceptable to the Participants (a) all risk property insurance covering the Equipment and each Unit ("*Property Insurance*"), in such amounts and on such terms and conditions not less favorable to the Additional Insureds or to the Equipment or such Unit as is then carried by the Lessee with respect to other similar 200 millimeter semiconductor manufacturing equipment owned, leased or operated by the Lessee or any of its Affiliates and otherwise reasonably acceptable to the Participants and consistent with the then-current industry practice, containing such deductibles or other self-insurance retainage amounts consistent therewith and as are reasonably acceptable to the Participants; and (b) comprehensive general liability insurance for bodily injury, death and property damage resulting from the use, operation, ownership and possession of the Equipment and each Unit ("*Liability Insurance*") in such amounts and on such terms and conditions not less favorable to the Additional Insureds or to the Equipment or such Unit as is then carried by the Lessee or any of its Affiliates with respect to other 200 millimeter semiconductor manufacturing equipment owned, leased or operated by the Lessee or any of its Affiliates which are similar to the Equipment and each Unit and otherwise reasonably acceptable to the Participants and consistent with the then-current industry practice, containing such deductibles or other self-insurance retainage amounts consistent therewith and reasonably acceptable to the Participants and shall be provided by an insurer rated "A-" or better by A.M. Best Company; *provided, however*, that such Liability Insurance shall in any event be in an amount not less than $10,000,000 per occurrence; and *provided, further, however*, that Property Insurance shall not be less than the full replacement cost in the aggregate per occurrence. The Lessee shall maintain the minimum Liability Insurance requirement contained herein. All losses in respect of Liability Insurance shall be paid to the Person entitled thereto. All losses in respect of Property Insurance will be adjusted with the insurers by the Lessee, but shall be paid to the Lessor or, so long as the Lien of the Indenture shall not have been discharged in accordance with the terms thereof, the Indenture Trustee and shall be applied as provided in Section 10(c) below. The Lessee shall, at its own expense, make all proofs of loss and take all other steps necessary to collect the proceeds of any Property Insurance. All insurance obtained by the Lessee pursuant to this Section 10 shall be at its own cost and expense or the cost and

expense of a permitted sublessee (but without affecting the Lessee's obligation to pay such expense if such permitted sublessee does not).

   (b) *Insurance Policies.*

   Any insurance policies carried in accordance with this Section 10 and any policies taken out in substitution or replacement for any such policies, shall name the Lessor, the Owner Participant, the Trust Company, the Loan Participants and the Indenture Trustee as additional insureds (collectively, the "*Additional Insureds*") as their respective interests may appear (but without imposing on any such party liability to pay premiums with respect to such insurance) and as to Property Insurance, shall name the Lessor (or, if the Lien of the Indenture shall not have been discharged pursuant to the terms thereof, the Indenture Trustee) as loss payee. Each such insurance policy shall provide that all of the provisions thereof, except the limits of liability (which shall be applicable to all insureds as a group) and liability for premiums (which shall be solely a liability of the Lessee), (i) shall operate in the same manner as if there were a separate policy covering each insured; (ii) shall be primary without right of contribution from any insurance carried by any Additional Insured; (iii) shall provide that the insurers waive any rights of setoff, counterclaim, deduction or subrogation against the Additional Insureds and that none of the respective interests of the Additional Insureds in such policies shall be invalidated by any act or omission of, or breach of warranty or condition contained in such policies by, the Lessee or any Affiliate of the Lessee or, in the case of any Additional Insured, any other insured; and (iv) shall provide that no cancellation, expiration or lapse of coverage for nonpayment of premium or otherwise, no reduction in coverage and no other change of coverage which adversely affects the interests of any Additional Insured, shall be effective as to any such Additional Insured until 30 days (10 days in the case of cancellation of the Property Insurance due to fraud or material misrepresentation by the Lessee) after receipt by such Additional Insured of written notice from the insurers of such cancellation, lapse, reduction or change. The Lessee shall, at its own cost and expense, make all proofs of loss and take all other commercially reasonable steps necessary to collect the proceeds of such insurance. The Lessee shall also name the Lessor, the Owner Participant, the Loan Participants, the Trust Company and the Indenture Trustee as additional insureds, as their interests may appear, on any policy which the Lessee may (but shall not be obligated to), in its sole discretion, carry with respect to catastrophic environmental events.

   (c) *Application of Insurance Proceeds.*

   Any payments received in respect of Property Insurance that the Lessee is required to maintain pursuant to Section 10(a) hereof shall be applied as follows:

     (i) if such insurance payments are received with respect to loss or damage not constituting an Event of Loss, then such payments shall be applied in payment for the rebuilt or replacement improvement or improvements in accordance with the terms of Section 6 hereof, to the extent not already paid for by the Lessee, or to reimburse the Lessee for such repairs or replacements to the extent already paid for by the Lessee, and any balance of such insurance payments remaining after compliance with such Section with respect to such loss shall be paid to the Lessee;

- 18 -

(ii)     if such insurance payments are received with respect to an Event of Loss pursuant to Section 9 hereof, then such payments shall be paid over to, or retained by, the Lessor (or if the Lien of the Indenture shall not have been discharged in accordance with the terms thereof, the Indenture Trustee), as security for the performance of the Lessee's obligations under Section 9(a) with respect to such Event of Loss (subject to the release to the Lessee in accordance with Section 9 hereof), until the Lessee shall have fully performed its obligations under Section 9(a), at which time such payments shall be paid over to the Lessee.

(d)     *Insurance Reports and Certificates.*

The Lessee shall furnish, or cause to be furnished, to each Additional Insured, on the Closing Date and annually thereafter, a certificate of insurance brokers reasonably acceptable to the Lessor (the "*Insurance Broker*"), on ACORD or similar forms describing in reasonable detail the insurance then carried and maintained with respect to the Equipment and each Unit and stating the opinion of such firm that such insurance complies with the terms of this Section 10. In addition, the Lessee will also deliver to each Additional Insured on or prior to the Closing Date and on or prior to the date of expiration of any insurance policy referenced in a previously delivered certificate of insurance, a new certificate of insurance, substantially in the same form as delivered by the Lessee to such parties on the Closing Date, except for the changes in the report or the coverage consistent with the terms hereof.

(e)     *Failure to Maintain Insurance.*

To the extent that the insurance required to be maintained by the Lessee under this Section 10 shall not be maintained, any Additional Insured may at its sole option, but shall be under no duty to, provide such insurance and, in such event, the Lessee shall, upon demand, reimburse such Additional Insured for the actual cost thereof to such Additional Insured, together with interest thereon at the Overdue Rate from the date of payment by such Person to the date of reimbursement; provided, however, that no exercise by the Lessor of such option shall in any way affect the provisions of this Equipment Lease, including the provisions that failure by the Lessee to maintain the prescribed insurance shall constitute an Event of Default under Section 15(h).

(f)     *Copies and Descriptions of Policies.*

If requested by the Lessor, the Owner Participant, any Loan Participant or the Indenture Trustee, the Lessee will arrange to be delivered to such Person copies of any insurance policies required to be maintained pursuant to Section 10(a). If requested by the Lessor, the Owner Participant, any Loan Participant or the Indenture Trustee, the Lessee shall promptly furnish to such Person, an Officer's Certificate setting forth all insurance maintained by or on behalf of the Lessee pursuant to this Section 10 and describing such policies, if any, including the amounts of coverage, any deductible or other self-insurance retainage amounts, the names of the insurance providers and a general description of each such policy's terms.

(g)     *Insurance For Own Account.*

- 19 -