**Exhibit B**

EXECUTION VERSION

TRUST INDENTURE AND SECURITY AGREEMENT
(QIMONDA LEASING TRUST 2007)

Dated as of September 28, 2007

Between

WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, not in its individual
capacity, but solely as Owner Trustee, as Lessor

and

BANK OF UTAH, not in its individual
capacity, except as otherwise expressly provided herein,
but solely as trustee hereunder,
as Indenture Trustee

TABLE OF CONTENTS

| SECTION | HEADING | PAGE |
|---|---|---|

Recitals.............................................................................................................1

Granting Clause ...............................................................................................2

SECTION 1.      DEFINITIONS; REFERENCES ........................................................4

SECTION 2.      THE NOTES ................................................................................4

Section 2.01.   Form, Execution and Authentication of Notes .........................4
Section 2.02.   Issuance of Notes at Closing............................................4
Section 2.03.   Terms of Notes ........................................................5
Section 2.04.   Prepayment of Notes; Calculation of the Make-Whole
                Amount ...............................................................5
Section 2.05.   Payments from Trust Estate ............................................7
Section 2.06.   Method of Payment ....................................................8
Section 2.07.   Application of Payments to Principal, the Make-Whole
                Amount and Interest ...................................................9
Section 2.08.   Termination of Interest ..............................................9
Section 2.09.   Registration, Transfers, Exchanges and Cancellation of Notes.................9
Section 2.10.   Mutilated, Destroyed, Lost or Stolen Notes ..........................11
Section 2.11.   Payment of Expenses on Issuance of New Notes ......................12
Section 2.12.   Notices of Prepayments ..............................................12
Section 2.13.   Representations and Warranties.......................................12

SECTION 3.      RECEIPT, DISTRIBUTION AND APPLICATION OF INCOME FROM
                THE INDENTURE ESTATE ...............................................12

Section 3.01.   Equipment Lease Rent; Certain Supplemental Rent ..................12
Section 3.02.   Payments Following Event of Loss.....................................13
Section 3.03.   Payments After Indenture Event of Default ..........................14
Section 3.04.   Payments for Other Specific Purposes .................................16
Section 3.05.   Other Payments .......................................................16
Section 3.06.   Payments to Lessor After Default or Under Section 9(e) of
                the Equipment Lease .................................................17
Section 3.07.   Excepted Payments ...................................................17
Section 3.08.   Distributions to the Owner Participant................................17
Section 3.09.   Investment of Amounts Held by the Indenture Trustee;
                Investment Disclosure ...............................................17

SECTION 4.      COVENANTS OF LESSOR; DEFAULTS; REMEDIES OF THE
                INDENTURE TRUSTEE.................................................18

Section 4.01.   Covenants of Lessor ..................................................18

| SECTION | HEADING | PAGE |
|---|---|---|
| Section 4.02. | Occurrence of Indenture Event of Default | 18 |
| Section 4.03. | Action Upon Indenture Event of Default | 20 |
| Section 4.04. | Right to Cure Certain Defaults | 21 |
| Section 4.05. | Remedies | 22 |
| Section 4.06. | Return of Collateral, etc. | 23 |
| Section 4.07. | Indenture Trustee Authorized to Execute Bills of Sale, etc. | 25 |
| Section 4.08. | Purchase of Collateral by Indenture Trustee or Noteholders | 26 |
| Section 4.09. | Receipt a Sufficient Discharge | 26 |
| Section 4.10. | Appointment of Receiver | 26 |
| Section 4.11. | Waiver of Various Rights by the Lessor | 27 |
| Section 4.12. | Remedies Cumulative | 27 |
| Section 4.13 | Discontinuation of Proceedings | 27 |
| Section 4.14. | No Action Contrary to Lessee's Rights Under Equipment Lease | 28 |
| Section 4.15. | Exercise of Rights Subject to Applicable Law | 28 |
| Section 4.16. | Waiver of Defaults | 28 |
| Section 4.17. | Proceedings by Noteholders | 28 |
| Section 4.18. | Indenture Trustee May File Proofs of Claims | 29 |
| Section 4.19. | No Remedies While Lessee or Guarantor Holds All Note | 30 |
| SECTION 5. | DUTIES OF INDENTURE TRUSTEE; CERTAIN RIGHTS OF LESSOR | 30 |
| Section 5.01. | Action Upon Indenture Default or Indenture Event of Default | 30 |
| Section 5.02. | Action Upon Instructions Generally | 31 |
| Section 5.03. | Indemnification, etc. | 31 |
| Section 5.04. | Duties to Remove Liens and Provide Reports, etc. | 32 |
| Section 5.05. | No Action Except Under Equipment Lease, Indenture or Instructions | 32 |
| Section 5.06. | Certain Rights of Lessor and Owner Participant | 32 |
| SECTION 6. | THE INDENTURE TRUSTEE | 34 |
| Section 6.01. | Acceptance of Trusts and Duties | 34 |
| Section 6.02. | Absence of Duties Except as Specified | 35 |
| Section 6.03. | No Representations or Warranties | 35 |
| Section 6.04. | Segregation of Monies; No Interest | 36 |
| Section 6.05. | Reliance; Agents; Advice of Counsel | 36 |
| Section 6.06. | No Compensation from Participants, etc. | 37 |
| Section 6.07. | Capacity | 37 |
| Section 6.08. | Indenture Trustee May Own Notes, etc. | 37 |
| SECTION 7. | SUCCESSOR INDENTURE TRUSTEES AND SEPARATE TRUSTEES | 37 |
| Section 7.01. | Resignation or Removal of Indenture Trustee; Appointment of Successor | 37 |
| Section 7.02. | Appointment of Additional and Separate Trustees | 38 |

| SECTION | HEADING | PAGE |
|---|---|---|

SECTION 8.    SUPPLEMENTAL INDENTURES AND AMENDMENTS TO
              OPERATIVE DOCUMENTS ........................................................................ 41

    Section 8.01.    Supplemental Indentures and Amendments to Operative
                Documents With Consent of Noteholders ........................................ 41
    Section 8.02.    Supplemental Indentures Without Consent of Noteholders ................... 42
    Section 8.03.    Indenture Trustee Protected ................................................................. 42
    Section 8.04.    Form of Request ................................................................................. 43
    Section 8.05.    Documents Mailed to Noteholders ...................................................... 43
    Section 8.06.    This Section 8 Exclusive ..................................................................... 43

SECTION 9.    AGREEMENTS OF LESSOR ...................................................................... 43

    Section 9.01.    Liability of Indenture Trustee, Noteholders and Lessor Under
                Other Documents ........................................................................... 43
    Section 9.02.    Appointment of Indenture Trustee as Attorney ................................... 43
    Section 9.03.    Payments of Monies to Indenture Trustee ........................................... 43
    Section 9.04.    Further Assurances; Financing Statements .......................................... 44
    Section 9.05.    Limitations on Actions of Lessor ......................................................... 44
    Section 9.06.    Notice of Indenture Default; Furnishing of Documents ........................ 45
    Section 9.07.    No Representations or Warranties ........................................................ 45
    Section 9.08.    Owner Trustee Not Acting in Individual Capacity ............................... 46

SECTION 10.   MISCELLANEOUS .................................................................................... 46

    Section 10.01.   Termination of Indenture; Release of Collateral ................................... 46
    Section 10.02.   No Legal Title to Indenture Estate in Noteholders ............................... 47
    Section 10.03.   Sale of Equipment and Other Collateral by Indenture Trustee
                Is Binding ....................................................................................... 47
    Section 10.04.   Indenture and Notes for Benefit of Lessor, Owner
                Participant, Indenture Trustee and Noteholders Only ....................... 48
    Section 10.05.   Notices ............................................................................................... 48
    Section 10.06.   Payments Due Other Than on Business Days ....................................... 49
    Section 10.07.   Security Agreement, etc ...................................................................... 49
    Section 10.08.   Separability ........................................................................................ 49
    Section 10.09.   Written Changes Only .......................................................................... 49
    Section 10.10.   Separate Counterparts ......................................................................... 49
    Section 10.11.   Successors and Assigns ....................................................................... 50
    Section 10.12.   Headings; References; etc .................................................................... 50
    Section 10.13.   Applicable Law ................................................................................... 50
    Section 10.14.   Withholding Taxes .............................................................................. 50
    Section 10.15.   Counterpart of Equipment Lease ......................................................... 52
    Section 10.16.   Rights of Lessee, Guarantor or any Affiliate ....................................... 52

| SECTION | HEADING | PAGE |
|---|---|---|

APPENDIX

| Appendix A | Definitions | |
| Appendix B | Form of Note | |

SCHEDULES

| Schedule I | Loan Participants | |

EXHIBITS

| Exhibit A | Description of Equipment | |
| Exhibit B | Description of the Site | |

## TRUST INDENTURE AND SECURITY AGREEMENT
(Qimonda Leasing Trust 2007)

This TRUST INDENTURE AND SECURITY AGREEMENT, dated as of September 28, 2007, is entered into between WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, a national banking association, not in its individual capacity but solely as Owner Trustee under the Trust Agreement (the *"Owner Trustee"*), as grantor and Lessor (such term and all other capitalized terms used herein and not otherwise defined herein having the respective meanings set forth in Section 1), and BANK OF UTAH, a Utah corporation, not in its individual capacity, except as otherwise expressly provided herein, but solely as trustee under this Indenture (the *"Indenture Trustee"*).

### RECITALS

A.    The Lessee, the Owner Participant, the Loan Participants, the Owner Trustee, the Lessor and the Indenture Trustee have entered into the Participation Agreement, which provides, among other things, for the purchase by the Lessor from the Lessee of the Equipment.

B.    The Owner Participant and Wells Fargo Bank Northwest, National Association, individually and as Owner Trustee, have entered into the Trust Agreement, which creates a grantor trust for the benefit of the Owner Participant and pursuant to which, among other things, the Lessor is authorized (a) to purchase from the Lessee the Equipment, (b) to hold as part of the Trust Estate (i) the Equipment and (ii) the real property interest in the Site that is conveyed by the Lessee to the Lessor under the terms of the Equipment Lease, (c) to lease the Equipment to the Lessee pursuant to the Equipment Lease and (d) to execute and deliver this Indenture and the Notes.

C.    The parties are entering into this Indenture to (a) provide for the terms on which the Notes may be issued and (b) secure the payment of the principal of, and the Make-Whole Amount (as hereinafter defined), if any, and interest on, all the Notes from time to time Outstanding by creating (i) a security interest in the Equipment, (ii) an assignment of the rights of the Lessor under the Equipment Lease, the Guaranty, the Software and the Bill of Sale and (iii) a security interest in all other property or rights that from time to time constitute a part of the Trust Estate, all subject to the Excepted Payments and the Excepted Rights.

D.    The execution and delivery of this Indenture and each of the other Operative Documents by the Persons who are to be parties thereto is a condition precedent to the obligation of each of the Loan Participants to purchase the Notes to be purchased by it pursuant to the Participation Agreement and this Indenture.

E.    All things necessary to make this Indenture the valid and legally binding obligation of the Lessor, in accordance with the terms hereof, have been done and performed and have happened.

NOW, THEREFORE, THIS TRUST INDENTURE AND SECURITY AGREEMENT WITNESSETH that, to secure the payment and performance of the Obligations, including, without limitation, the

payment of the principal of, and the Make-Whole Amount, if any, and interest on, the Notes from time to time Outstanding and in consideration of the premises and of the purchase of the Notes by the Loan Participants and of the acceptance by the Indenture Trustee of the trust created hereby:

### GRANTING CLAUSE

Each of the Owner Trustee, in its capacity as such, and the Lessor, has granted, bargained, sold, assigned, transferred, conveyed, mortgaged, pledged, granted a security interest in and confirmed, and by these presents hereby grants, bargains, sells, assigns, transfers, conveys, mortgages, pledges, grants a security interest in and confirms, unto the Indenture Trustee the following:

(1)    all estate, right, title and interest of the Lessor in and to the Equipment, as more particularly described in Exhibit A, including, without limitation, all estate, right, title and interest of the Lessor in and to (i) each Unit, (ii) any and all modifications, Parts, and any Replacement Units, and (iii) all other appliances, components, parts, instruments, furnishings, appurtenances, accessories, accessions, and other equipment and improvements of whatever nature that are from time to time incorporated or installed as part of the Equipment, in all cases, whether now owned or hereafter acquired;

(2)    all estate, right, title and interest of the Lessor, as lessor, under the Equipment Lease, including, without limitation, all amounts of Rent and all other amounts payable to the Lessor, as lessor, under the Equipment Lease and all rights and remedies of the Lessor under the Equipment Lease or otherwise to enforce the payment of such amounts, in all cases, whether now owned or hereafter acquired;

(3)    all estate, right, title and interest of the Lessor under the Bill of Sale and the Software including, without limitation, all covenants and warranties in favor of the Lessor and all other rights and remedies of the Lessor under each such document, in all cases, whether now owned or hereafter acquired;

(4)    without limiting any of clause (1), all other estate, right, title or interest of the Lessor in or relating to all or any portion of the Equipment or the Site, whether now owned or hereafter acquired;

(5)    all estate, right, title and interest of Lessor under the Guaranty, including without limitation, the present and continuing right to make a claim for, collect, receive and make receipt for any and all payments under the Guaranty;

(6)    without limiting any of the foregoing granting clauses, all other property now or at any time hereafter constituting a part of the Trust Estate;

(7)    all monies and securities deposited or required to be deposited with the Lessor or the Indenture Trustee pursuant to any term of this Indenture or any other Operative Document; and

-2-

(8)     all proceeds and products of any of the foregoing.

BUT, EXCLUDING, HOWEVER, from the properties, estates, rights, titles and interests that are subject to the foregoing Granting Clause all Excepted Payments and all Excepted Rights.

TO HAVE AND TO HOLD all and singular the aforesaid properties, estates, rights, titles and interests, whether now owned or held or hereafter acquired (such properties, estates, rights, titles and interests being herein referred to as the *"Indenture Estate"*), unto the Indenture Trustee in trust for the benefit and security of the holders of the Notes from time to time Outstanding, without any priority of any Note over any other, and for the uses and purposes and subject to the terms and provisions set forth in this Indenture; *provided* always, however, that this Indenture shall remain in full force and effect until terminated as provided in Section 10.01.  The lien and security interest created by the foregoing grant attaches upon the delivery hereof.

Concurrently with the delivery hereof, the Lessor is delivering to the Indenture Trustee, and by its execution hereof the Indenture Trustee acknowledges receipt of, executed originals or original counterparts of the Participation Agreement, the Trust Agreement, the Equipment Lease, the Guaranty, the Software (to the extent that delivery thereof is feasible and does not interfere with use thereof by the Person's entitled under the Operative Documents to such use) and the Bill of Sale.

IT IS HEREBY AGREED that, to the fullest extent permitted by Applicable Law, any portion of the Indenture Estate that constitutes personal property or fixtures is to be deemed and held to be personal property, that the Lessor shall have the unlimited right to remove all such personal property and fixtures at any time and from time to time, and that the Lien of this Indenture on such personal property and fixtures shall remain in full force and effect following such removal until all the Obligations have been paid and performed in full.  To the fullest extent permitted by Applicable Law, the parties hereto stipulate and agree that the Equipment shall at all times be and remain personal property.  This conveyance shall include, and the Lien of this Indenture shall encumber and extend to, all further or additional estates, rights, titles or interests at any time acquired by the Lessor in or to the Site more particularly described in Exhibit B.

THE LESSOR AGREES that at any time, upon the written request of the Indenture Trustee, the Lessor will promptly and duly execute and deliver any and all such further instruments and documents as the Indenture Trustee may reasonably deem necessary or appropriate to obtain the full benefits of this Indenture and of the rights and powers herein granted.

THE LESSOR HEREBY WARRANTS AND BINDS itself to forever defend all the estates, rights, titles and interests described in the foregoing Granting Clause, including, without limitation, the leasehold estate described in clause (2) thereof, the Equipment, and the amounts of Rent and other monies referred to therein, unto the Indenture Trustee against every Person claiming or to claim the same, or any part thereof, by, through or under the Lessor (but not otherwise), excluding Permitted Liens and any estates, rights, titles and interests created pursuant to, or expressly permitted by, the Operative Documents, excepting and reserving the Excepted Payments and the Excepted Rights, and subject to Section 9.08 of this Indenture.

-3-

It is hereby covenanted and agreed by and between the parties hereto as follows:

SECTION 1.      DEFINITIONS; REFERENCES.

(a)     Unless otherwise defined herein or the context shall otherwise require, terms used herein shall have the respective meanings assigned thereto in Appendix A (which Appendix A is concurrently being used with certain other Operative Documents and may contain terms not otherwise used in this Indenture) for all purposes hereof, which Appendix A shall for all purposes constitute a part of this Indenture and shall be subject to amendment in accordance with Section 8.

(b)     Unless the context otherwise indicates, references herein to any Section, paragraph, Appendix, Schedule or Exhibit are to the corresponding Section or paragraph of, or the corresponding Appendix, Schedule or Exhibit to, this Indenture.

SECTION 2.      THE NOTES.

Section 2.01.     *Form, Execution and Authentication of Notes.*  (a) Each Note shall be substantially in the form of Appendix B.

(b)     The Notes are certificated securities within the meaning of Article 8 of the UCC, in registered form, that are to be treated as securities governed by Article 8 of the UCC.

(c)     Each Note shall be signed on behalf of the Lessor by a Responsible Officer.

(d)     No Note shall be entitled to any benefit under this Indenture unless there appears thereon a certificate of authentication in the form provided in this Section 2.01 that has been executed on behalf of the Indenture Trustee by the manual signature of a Responsible Officer thereof, and such certificate upon any Note shall be conclusive evidence that such Note has been duly authenticated and delivered hereunder.  The Indenture Trustee's certificate of authentication shall be in substantially the following form:

This Note is one of the Notes referred to in the within-mentioned Indenture.

BANK OF UTAH, as Indenture Trustee

By:_____

Printed Name:_____

Its:_____

Section 2.02.     *Issuance of Notes at Closing.*  (a) On the Closing Date, upon satisfaction of the conditions precedent set forth in Section 3 of the Participation Agreement, the Lessor shall execute and deliver to the Indenture Trustee, and the Indenture Trustee shall authenticate and deliver to each Loan Participant, a Note in the aggregate principal amount set forth opposite the

name of such Loan Participant on Schedule I. Each such Note shall be dated the Closing Date and shall be issued in accordance with, and subject to the terms of, the Participation Agreement.

(b)  The Indenture Trustee shall authenticate and deliver Notes as provided in this Section 2.02 and as provided in Section 2.09 or 2.10 and not otherwise.

*Section 2.03.  Terms of Notes.* (a) The unpaid principal amount of each Outstanding Note shall bear interest from the date thereof until the date such principal amount first becomes due and payable at the rate, and the principal of and interest on each Outstanding Note shall be due and payable at the times, provided in such Note. Any principal amount of, and any amount of the Make-Whole Amount and (to the extent permitted by Applicable Law) accrued interest on, any Note that is not paid on the date when the same first becomes due and payable shall bear interest, payable on demand, at the rate provided in such Note from such date until such amount is paid.

(b)  No Note is subject to purchase or prepayment, in whole or in part, except as provided in Section 2.04. Any purchase or prepayment of a Note shall be accompanied by (i) the Make-Whole Amount, if any, that is due and payable as a result of such purchase or prepayment in accordance with Section 2.04 and (ii) accrued and unpaid interest on the unpaid principal amount of such Note to the date of such purchase or prepayment.

*Section 2.04.  Prepayment of Notes; Calculation of the Make-Whole Amount.*

(a)  *Mandatory Prepayment Upon Certain Events of Loss.* If an Event of Loss as to which Section 9(a)(i) of the Equipment Lease applies shall occur, then the Lessor shall prepay, and there shall become due, on the Loss Payment Date pertaining to such Event of Loss, the Outstanding Notes in an amount equal in the case of each such Note to the sum of (i) as to principal thereof, an amount equal to the product obtained by multiplying the aggregate unpaid principal amount of each such Note as of such Loss Payment Date (after deducting therefrom any principal installment due on such Loss Payment Date) by a fraction, the numerator of which shall be the Equipment Cost of such Unit and the denominator of which shall be the aggregate Total Equipment Cost of all Units which are subject to the Equipment Lease immediately prior to such Loss Payment Date and (ii) as to interest, the interest accrued and unpaid in respect of the principal amount being prepaid pursuant to clause (i) above on such Loss Payment Date. No payment of the Make-Whole Amount shall be payable in respect of any such prepayment of the Outstanding Notes pursuant to this Section 2.04(a).

(b)  *Optional Purchase or Prepayment.* If an Event of Default has occurred and is continuing and no other Indenture Default exists, the Lessor may, at its option, at any time, whether or not the maturity of the Outstanding Notes has been accelerated pursuant to Section 4.03(a), purchase or prepay all (but not less than all) Outstanding Notes at 100% of the unpaid principal amount thereof, together with all accrued but unpaid interest thereon to the Prepayment Date, plus, in the case of a prepayment prior to acceleration pursuant to Section 4.03(a), unless such Event of Default has occurred and is continuing for more than 180 days and the Notes have not been accelerated, the Make-Whole Amount. If the Lessor shall desire to exercise the option provided in this paragraph (b) to purchase or prepay all Outstanding Notes, the Lessor shall give notice (which notice shall be irrevocable) of such purchase or

-5-

prepayment to the Indenture Trustee. Such notice of purchase or prepayment shall be given to the Indenture Trustee not less than 15 days prior to the Prepayment Date and shall specify the date fixed for purchase or prepayment (the *"Prepayment Date"*). If the Lessor shall have given the Indenture Trustee notice of purchase or prepayment as provided in this paragraph (b), then (i) if the Outstanding Notes are to be purchased pursuant to this Section 2.04(b), the purchase price shall be equal to the unpaid principal amount of all Outstanding Notes, together with accrued but unpaid interest thereon to the Prepayment Date, plus (if required to be paid as set forth above) the Make-Whole Amount, and the Lessor shall pay to each Noteholder on the Prepayment Date the unpaid principal amount of such Note, together with accrued but unpaid interest thereon to the Prepayment Date, plus (if required to be paid as set forth above) the Make-Whole Amount, and upon payment of such amount to such Noteholder, such Noteholder shall forthwith sell, assign, transfer and convey to the Lessor or such other Person specified in the notice of purchase all right, title and interest of such Noteholder in and to such Outstanding Note, and (ii) if the Outstanding Notes are to be prepaid pursuant to this Section 2.04(b), the unpaid principal amount of all Outstanding Notes, together with accrued but unpaid interest thereon to the Prepayment Date plus (if required to be paid as set forth above) the Make-Whole Amount, shall (if and to the extent not then due without regard to such notice) become due and payable on the Prepayment Date and the Lessor shall, on the Business Day next preceding the Prepayment Date, deposit with the Indenture Trustee an amount of money sufficient to prepay on the Prepayment Date all Outstanding Notes, plus all amounts due and owing to the Indenture Trustee under this Indenture. In the case of any such purchase of the Outstanding Notes by the Lessor or its designee, each Noteholder shall take such actions as may be reasonably requested by the Lessor or such designee to enable such Noteholder's Note to be transferred to the Person acquiring such Note and to have such transfer recorded on the register maintained by the Indenture Trustee pursuant to Section 2.09, all at the cost and expense of the Lessor or such designee.

(c)     *Calculation of the Make-Whole Amount.* In connection with any purchase or prepayment of the principal amount of Outstanding Notes pursuant to paragraph (b) of this Section 2.04, in connection with the exercise of remedies pursuant to Section 4.03(a) or in connection with any other case in which premium is due and payable hereunder in respect of such Notes, the premium (the *"Make-Whole Amount"*) due and payable in respect of such Notes shall be calculated as of the third Business Day next preceding the Prepayment Date (the *"Premium Determination Date"*), as follows:

(i)     the average life of the remaining scheduled payments of principal in respect of the Outstanding Notes (in each case, the *"Remaining Average Life"*) shall be calculated as of the Premium Determination Date;

(ii)     the yield to maturity shall be calculated for a United States Treasury Bond or Note selected by the Indenture Trustee at the direction of the Required Holders, (1) having an average life equal to the Remaining Average Life of the Outstanding Notes and (2) trading in the secondary market in reasonable volume at a price closest to par (in each case, the *"Primary Issue"*) (such yield to maturity being the yield to maturity for each such Primary Issue implied by (1) the yields reported, as of 10:00 a.m., New York City time, on the Business Day next preceding the Premium Determination Date on the

display designated as "Page PX1" (or such other display as may replace Page PX1 on Bloomberg Financial Markets) or, if Page PX1 (or its successor screen on Bloomberg) is unavailable, the Telerate Access Service screen which corresponds most closely to Page PX1 for the most recently issued actively traded U.S. Treasury securities having a maturity equal to the Remaining Average Life of the Outstanding Notes as of such Premium Termination Date or (2) if such yields shall not be reported as of such time or the yields reported as of such time shall not be ascertainable, the Treasury Constant Maturity Series yields reported, for the latest day for which such yields shall have been so reported as of the Business Day next preceding the Premium Determination Date, in Federal Reserve Statistical Release H.15 (519) (or any comparable successor publication); *provided, however,* that if, with respect to the Outstanding Notes, no United States Treasury Bond or Note has an average life equal to the Remaining Average Life of such Outstanding Notes, the yields (the *"Other Yields"*) for the two maturities of United States Treasury Bonds or Notes having average lives most closely corresponding to such Remaining Average Life and trading in the secondary market in reasonable volume at a price closest to par shall be calculated in accordance with the preceding clauses (1) and (2) and the yield to maturity for the Primary Issue with respect to the Outstanding Notes shall be deemed to be the yield interpolated or extrapolated from such Other Yields on a straight-line basis, rounding in each of such relevant periods to the nearest month);

(iii)     the present value of the then remaining scheduled payments of principal and interest (but excluding that portion of any scheduled payment of interest which is actually due and paid on the Prepayment Date) in respect of the Outstanding Notes shall be calculated as of the Premium Determination Date using a discount factor equal to the sum of (1) the yield to maturity for the Primary Issue with respect to such Outstanding Notes determined in accordance with clause (ii) above plus (2) 0.50%; and

(iv)     the Make-Whole Amount in respect of the Outstanding Notes to be so prepaid shall be an amount equal to (1) the discounted present value of such Notes determined in accordance with clause (iii) above minus (2) the unpaid principal amount of the Outstanding Notes; *provided, however,* that the Make-Whole Amount shall not be less than zero.

On the Premium Determination Date, the Indenture Trustee shall notify the Lessor, the Owner Participant and the Lessee of the amount of the Make-Whole Amount in respect of the Outstanding Notes and shall deliver to the Lessor, the Owner Participant and the Lessee supporting calculations thereof (which calculations shall be conclusive absent manifest error).

*Section 2.05.     Payments from Trust Estate.*   All payments of principal, the Make-Whole Amount, if any, and interest to be made by the Lessor under this Indenture shall be made only from the income and the proceeds from the Trust Estate and only to the extent that the Lessor shall have sufficient income or proceeds from the Trust Estate payments. Each Noteholder by its acceptance thereof, agrees (i) that it will look solely to the income and proceeds from the Trust Estate to the extent available for distribution to such Noteholder as herein provided, and (ii) that in any action or proceeding brought on such Note, on the indebtedness evidenced thereby, under this Indenture or under any other Operative Document, except as expressly provided with respect

to the Lessor herein or in any other Operative Document, no deficiency or other monetary judgment shall be sought or obtained against the Owner Participant for the indebtedness evidenced by such Note, or against the Lessor under such Note, except as is necessary to enforce the rights and remedies of such Noteholder under this Indenture and the other Operative Documents (including, but not by way of limitation, the foreclosure of the Lien of this Indenture), in which event, and notwithstanding anything contained herein or in any other Operative Document to the contrary, any such judgment shall be enforceable against the Lessor only to the extent of the interest of the Lessor in the Trust Estate and any such judgment shall not be enforceable by execution or be a lien on any of the assets of the Lessor or the Owner Participant other than the interest of the Lessor and the Owner Participant in the Trust Estate. The foregoing shall not limit any personal liability of the Owner Participant or the Trust Company that is expressly provided under any Operative Document or for the breach of any representation, warranty or agreement contained in any Operative Document.

Section 2.06.    *Method of Payment.*

(a)    *Payments on Notes.*  The principal of, and the Make-Whole Amount, if any, and interest on, each Note shall be payable at the Corporate Trust Office and, subject to the provisions of Section 2.05, shall be paid by the Indenture Trustee by whichever of the following methods shall be specified in a written notice from the Noteholder of such Note to the Indenture Trustee:  (i) by crediting the amount of such payment in immediately available funds to an account designated in such notice that is maintained by such Noteholder or a nominee thereof with the Indenture Trustee, (ii) by transferring by wire transfer the amount of such payment in immediately available federal funds to a commercial banking institution, which shall be located in one of the 48 contiguous States of the United States of America, identified in such notice for credit to the account identified in such notice, or (iii) by mailing a federal funds check in the amount of such payment, payable to the order of such Noteholder or a nominee thereof, to such Noteholder or nominee at its address specified in such notice, in all cases without any presentment or surrender of any Note, except that the Noteholder shall surrender such Note to the Indenture Trustee as a condition to payment thereof at final maturity.  So long as any Loan Participant or nominee thereof shall be a Noteholder, all payments to such Loan Participant with respect to its Note shall be made by wire transfer of the amount of such payments in immediately available federal funds to the account or accounts specified for such Loan Participant in Schedule I to the Participation Agreement until such Loan Participant shall have specified otherwise by written notice to the Indenture Trustee in accordance with the first sentence of this Section 2.06(a).

(b)    *Holder as Absolute Owner, etc.*  The Lessor and the Indenture Trustee shall treat each Noteholder as the absolute owner of such Note for the purpose of receiving payment of all amounts payable with respect to such Note and for all other purposes.

(c)    *Record of Payment.*  The Indenture Trustee shall keep a record of each distribution made by the Indenture Trustee on account of any amounts due under any of the Notes and, upon written request therefore from the Lessor to the Indenture Trustee, the Indenture Trustee shall give notice to the Lessor of each such payment.

(d)   *Notices of Payments.*  If any Noteholder shall give a written instruction to the Indenture Trustee to provide notice of payments with respect to such Note, then at the time of each such payment, the Indenture Trustee shall send notice thereof to the address or addresses specified in such written instruction.  So long as any Loan Participant or nominee thereof shall be a Noteholder, notice of payments with respect to such Note shall be sent to the address or addresses specified for such Loan Participant in Schedule I to the Participation Agreement until such Loan Participant shall have given a contrary written instruction to the Indenture Trustee in accordance with the first sentence of this Section 2.06(d).

Section 2.07.   *Application of Payments to Principal, the Make-Whole Amount and Interest.*  In the case of each Note, each payment of principal thereof, and the Make-Whole Amount, if any, and interest thereon, shall be applied, *first,* to the payment of accrued but unpaid interest on such Note (including any interest on overdue principal, the Make-Whole Amount and (to the extent permitted by Applicable Law) interest) to the date of such payment, *second,* to the payment of the unpaid principal amount of such Note, and *third,* the balance, if any, remaining thereafter, to the payment of the Make-Whole Amount, if any, then due and payable on such Note, *provided* that such Note shall not be subject to prepayment by the Lessor except as provided in Section 2.04 or as a result of the acceleration of the maturity thereof pursuant to Section 4.03(a).

Section 2.08.   *Termination of Interest.*  A Noteholder shall have no further interest in, or other right with respect to, the Trust Estate or the Indenture Estate when and if (i) the entire principal amount of, all of the Make-Whole Amount, if any, due and payable on, and all accrued interest on, all Notes held by such Noteholder, (ii) all other sums payable to such Noteholder pursuant to such Notes or pursuant to any other Operative Document, and (iii) all other Obligations then due, shall have been discharged and paid in full.

Section 2.09.   *Registration, Transfers, Exchanges and Cancellation of Notes.*

(a)   *Registration.*  The Indenture Trustee shall maintain at the Corporate Trust Office a register for the purpose of registering all Notes and transfers and exchanges thereof.  A Noteholder that intends to transfer such Note, or to exchange such Note for Notes of different denominations, shall surrender such Note to the Indenture Trustee at the Corporate Trust Office, together with a written request from such Noteholder for the issuance of one or more new Notes.  Such notice shall specify the denomination or denominations of such new Note or Notes (which shall be not less than $1,000,000 or a whole multiple thereof or such smaller denomination as may be necessary due to the aggregate principal amount of such surrendered Note being less than $1,000,000 in which case such new Note shall be issued in a like aggregate principal amount as the surrendered Note) and, in the case of a surrender for registration of transfer, the name and address of the Person in whose name such new Note or Notes are to be registered.  Promptly upon receipt of such documents by the Indenture Trustee, the Lessor shall execute and deliver to the Indenture Trustee, and the Indenture Trustee shall authenticate and deliver to such Noteholder, a new Note or Notes, in the same aggregate original principal amount, and dated the same date as such surrendered Note or Notes.  Such new Note or Notes shall be in such denomination or denominations and registered in such name or names as shall be specified in the written request from such Noteholder.  Each Note so surrendered for registration of a transfer

-9-

shall be accompanied by a written instrument of transfer duly executed by the Noteholder of such Note or its attorney duly authorized in writing; *provided however*, that no transfer shall be effective unless the intended new Noteholder is an Eligible Assignee (other than in connection with a purchase of the Notes by the Lessee, Guarantor or any Affiliate of the Lessee or Guarantor pursuant to Section 19 of the Participation Agreement or the exercise of any remedies under the Operative Documents during the continuance of an Indenture Event of Default, and in connection with such exercise of remedies such Person shall meet the qualifications of Sections 8.2(a), (c), (d), (e) and (f) of the Participation Agreement). Each new Note issued pursuant to this Section 2.09 shall bear a notation by the Indenture Trustee of (i) the aggregate amounts of principal of, and the Make-Whole Amount, if any, on, the Note so surrendered that (1) were paid to any Noteholder thereof at any time prior to the delivery of such new Note or Notes and (2) are allocable to such new Note or Notes on the basis of the respective original principal amounts thereof and (ii) the date to which interest on such Note had been paid to at the time of such delivery. The Indenture Trustee shall not register the transfer or exchange of any Note during the ten-day period immediately preceding the date that any payment on such Note becomes due and payable. All Notes issued upon any registration of transfer or exchange of Notes shall be valid obligations of the Lessor, and shall be entitled to the same security and benefits under this Indenture as the Notes surrendered upon such registration of transfer or exchange. No transfer of any Note shall be valid unless and until such transfer is registered, subject to satisfaction of the requirements set forth in this Section 2.09 and to the other provisions of this Indenture as applicable, on the note register maintained by the Indenture Trustee pursuant to this Section 2.09(a). The Indenture Trustee shall provide the Lessor and Lessee with such information as either may request as to the Noteholders.

(b)   *Inspection*. The register referred to in this Section 2.09 shall at all reasonable times be open for inspection by any Noteholder, the Lessor, the Owner Participant, the Trust Company, the Owner Trustee or the Lessee. Upon request by any Noteholder, the Lessor, the Trust Company, the Owner Trustee or the Owner Participant, the Indenture Trustee shall furnish such Person, at the expense of such Person, a list of the names and addresses of all Noteholders indicating the respective unpaid principal amounts and number of Notes held by such Noteholders.

(c)   *Cancellation of Notes*. Each Note surrendered to the Indenture Trustee pursuant to Section 2.06, this Section 2.09 or Section 2.10, shall be canceled by the Indenture Trustee, and no Note shall be issued in lieu thereof except as expressly permitted by this Section 2.09 or Section 2.10. The Indenture Trustee shall return all Notes canceled by it to the Lessor.

(d)   *Transfer Restrictions; Legend*. Each Note delivered to a Loan Participant pursuant to Section 2.02(a) shall be issued without registration of such Note under the Securities Act or under any state securities or "blue sky" law, and without qualification of this Indenture under the Trust Indenture Act. Accordingly, and each Noteholder's acceptance of a Note constitutes such Noteholder's agreement that, no interest in the Notes may be sold or otherwise disposed of in the absence of either (i) registration of such sale or disposition pursuant to an effective registration statement under the Securities Act and qualification thereof under applicable state securities laws or (ii) availability of an applicable exemption from such registration and qualification. All Notes issued hereunder shall bear a legend that shall read substantially as follows:

-10-

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES OR "BLUE SKY" LAW. THIS NOTE MAY NOT BE SOLD OR OTHERWISE DISPOSED OF IN WHOLE OR IN PART IN THE ABSENCE OF EITHER (A) REGISTRATION OF SUCH SALE OR DISPOSITION PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND QUALIFICATION THEREOF UNDER APPLICABLE STATE SECURITIES LAWS OR (B) AVAILABILITY OF AN APPLICABLE EXEMPTION FROM SUCH REGISTRATION AND QUALIFICATION.

Promptly after registration of transfer of any Note pursuant to Section 2.09(a), the Indenture Trustee will give notice thereof to the Lessee, the Lessor and the Owner Participant specifying the name and notice address of the transferee or transferees.

(e)     *Acquisition of Notes.*  If the Lessor or the Owner Participant shall acquire any of the Notes, such acquisition shall not operate as a redemption of, or the satisfaction of the indebtedness represented by, such Notes unless and until the same shall be delivered to the Indenture Trustee with a request for cancellation thereof pursuant to this Indenture, and upon such delivery the Indenture Trustee shall cancel such Note, with the effect provided for in Section 2.09(c).

*Section 2.10.     Mutilated, Destroyed, Lost or Stolen Notes.*  If any Note shall become mutilated, destroyed lost or stolen, then upon the written request of the applicable Noteholder, the Lessor shall execute and deliver to the Indenture Trustee, and the Indenture Trustee shall authenticate and deliver to such Noteholder, a new Note.  Such new Note shall be (i) registered in the name in which such mutilated, destroyed, lost or stolen Note was registered, (ii) in the same original principal amount as such mutilated, destroyed, lost or stolen Note, and (iii) dated the date of such mutilated, destroyed, lost or stolen Note.  If the Note being replaced has become mutilated, it shall be surrendered to the Indenture Trustee.  If the Note being replaced has been destroyed, lost or stolen, the holder thereof shall furnish to the Lessor and the Indenture Trustee such security or indemnity as reasonably may be required by them to save the Lessor and the Indenture Trustee harmless from any loss, however remote (including claims, for principal of, and the Make-Whole Amount, if any, and interest on, such destroyed, lost or stolen Note), and evidence satisfactory to the Lessor and the Indenture Trustee of the destruction, loss or theft of such Note and the ownership thereof, *provided* that if the Noteholder is an original party to the Participation Agreement or Affiliate thereof, the written undertaking of such Noteholder delivered to the Lessor and the Indenture Trustee shall be sufficient security and indemnity. Each Note issued pursuant to this Section 2.10 shall bear a notation by the Indenture Trustee of (i) the aggregate amounts of principal of, and the Make-Whole Amount, if any, on, such mutilated, destroyed, lost or stolen Note that were paid to any such Noteholder at any time prior to the delivery of such new Note and (ii) the date to which interest on such mutilated, destroyed, lost or stolen Note had been paid to any such Noteholder at the time of such delivery.

*Section 2.11.     Payment of Expenses on Issuance of New Notes.*  No service charge shall be made for the issuance of a new Note or Notes pursuant to Section 2.02, 2.09 or 2.10, but the Lessor or the Indenture Trustee may require from the Person requesting such new Note or Notes

-11-

payment of a sum to reimburse the Lessor and the Indenture Trustee for, or to provide funds for, the payment of any Tax or other governmental charge in connection therewith or any charges and expenses connected with such Tax or other governmental charge paid or payable by the Lessor or the Indenture Trustee.

Section 2.12.   *Notices of Prepayments.*  The Indenture Trustee shall give notice of any prepayment of the Notes pursuant to Section 2.04 to the Noteholders promptly after the Indenture Trustee shall have received notice that such prepayment is to occur.  Such notice from the Indenture Trustee shall specify the principal amount of the Notes held by such Noteholders so to be prepaid and the date on which such prepayment is to occur, but failure to give such notice to any Noteholder shall not affect the validity of the proceedings for such prepayment.

Section 2.13.   *Representations and Warranties.*  The transfer to or purchase by any Person of any Note shall be deemed to constitute a representation, warranty and agreement by such Person to the Lessee, the Owner Participant and the Indenture Trustee to the effect set forth in Section 8.2 of the Participation Agreement and that such Person is an Eligible Assignee (in each case, other than in connection with a purchase of the Notes by the Lessee, Guarantor or any Affiliate of the Lessee or Guarantor pursuant to Section 19 of the Participation Agreement or the exercise of any remedies under the Operative Documents during the continuance of an Indenture Event of Default and in connection with such an exercise of remedies, that such Person meets the qualifications of Sections 8.2(a), (c), (d), (e) and (f) of the Participation Agreement).

SECTION 3.         RECEIPT, DISTRIBUTION AND APPLICATION OF INCOME FROM THE INDENTURE ESTATE.

Section 3.01.   *Equipment Lease Rent; Certain Supplemental Rent.*  (a) Except as otherwise provided in Section 3.02, Section 3.03 and paragraph (b) of this Section 3.01, each installment or other payment of Equipment Lease Rent (other than any portion thereof constituting an Excepted Payment) or Supplemental Rent representing any payment of interest on any overdue installment of Equipment Lease Rent (and, to the extent permitted by Applicable Law, interest thereon) (but excluding any portion of such payment of Supplemental Rent constituting an Excepted Payment) received by the Indenture Trustee shall be distributed by the Indenture Trustee on the date such installment or payment is due from the Lessee (or as soon thereafter as such installment or payment shall be received by the Indenture Trustee), in the following order of priority:

> *first*, so much of such installment or payment as shall be required to pay in full the aggregate amount of the payment or payments of principal, Make-Whole Amount, if any, and interest (including any interest on overdue principal, Make-Whole Amount, if any, and, to the extent permitted by Applicable Law, interest) then due under the Notes shall be distributed to the Noteholders ratably, without priority of one over the other, in the proportion that the aggregate amount of such payments then due under such Notes held by each such Noteholder bears to the aggregate amount of such payments then due under all such Notes held by all such Noteholders; and

> *second*, the balance, if any, of such installment or payment shall be distributed to the Lessor.

-12-

(b)    Notwithstanding the provisions of paragraph (a) of this Section 3.01, if any such installment of Equipment Lease Rent or Supplemental Rent received by the Indenture Trustee shall be insufficient to make in full the distribution required by clause "first" of paragraph (a) of this Section 3.01 and such installment or payment shall have been received prior to the time such installment or payment shall have become distributable pursuant to Section 3.03, then so much of such installment or payment (together with any other installments of Equipment Lease Rent concurrently received and any portion of such insufficient installment or payment thereafter received) as shall be required to pay in full the aggregate amount of the payment or payments of principal, Make-Whole Amount, if any, and interest (including any interest on overdue principal, Make-Whole Amount, if any, and, to the extent permitted by Applicable Law, interest) then due under the Notes shall be distributed to the Noteholders, on the date such payments are due to Noteholders, and in case the aggregate amount so to be distributed shall be insufficient to pay such unpaid principal, Make-Whole Amount, if any, and interest in full, then, (i) ratably, without priority of one over the other, in the proportion that the aggregate unpaid interest then due on all the Notes held by each such Noteholder bears to the aggregate unpaid interest then due on all the Notes and (ii) the balance, if any, ratably, without priority of one over the other, in the proportion that the aggregate unpaid principal and Make-Whole Amount, if any, then due on all the Notes held by each such Noteholder bears to the aggregate unpaid principal and Make-Whole Amount, if any,  then due on all the Notes held by all such Noteholders.

Section 3.02.    *Payments Following Event of Loss.*  (a) Except as otherwise provided in Section 3.03 and paragraph (b) of this Section 3.02, in the event of any prepayment of a Note or Notes, in whole or in part, in accordance with Section 2.04(a) hereof, any amount received by the Indenture Trustee (other than any portion thereof constituting an Excepted Payment), shall in each case be distributed forthwith upon receipt by the Indenture Trustee in the following order of priority:

> *first*, so much of such amount as shall be required to pay all of the unpaid principal amount of, and all accrued but unpaid interest (including, to the extent permitted by Applicable Law, interest on interest) on, the Notes shall be distributed to the Noteholders, and in case the aggregate amount so to be distributed shall be insufficient to pay such unpaid principal and interest in full, then ratably, without priority of one over the other, in the respective proportions that the aggregate unpaid principal amount of, and accrued but unpaid interest to the date of distribution on, all Notes held by each such Noteholder bears to the aggregate unpaid principal amount of, and accrued but unpaid interest to the date of distribution on, all Notes held by all such Noteholders; and

> *second*, the balance, if any, of such amount or payment remaining thereafter shall be distributed to the Lessor.

(b)    Any payment received by the Indenture Trustee directly or through the Lessee from any insurer, Governmental Authority or other Person pursuant to Section 9 or 10 of the Equipment Lease (other than Excepted Payments), to the extent such payment is, upon satisfaction of any applicable conditions, payable to the Lessee pursuant to the terms of the Equipment Lease, but is not then required or then permitted to be paid to the Lessee pursuant to Section 9 or Section 10 of the Equipment Lease, as the case may be, shall be held by the

-13-

Indenture Trustee as security for the obligations of the Lessee to make payments or perform under the Operative Documents, and at such time as such payment is required to be paid to the Lessee pursuant to Section 9 or Section 10 of the Equipment Lease, such payment shall be paid to the Lessee subject to and in accordance with the Equipment Lease unless the Indenture Trustee as assignee of the Lessor shall have theretofore declared the Equipment Lease to be in default pursuant to Section 16 thereof, in which event such portion shall be distributed forthwith in accordance with the provisions of Section 3.03; *provided* that when this Indenture shall have been terminated and discharged pursuant to Section 10.01, all such amounts shall be paid over to the Lessor.

*Section 3.03.    Payments After Indenture Event of Default.*  All payments received and amounts held or realized by the Indenture Trustee as part of the Indenture Estate at any time when both (x) an Indenture Event of Default shall have occurred and be continuing and (y) the maturity of the Notes shall have been accelerated pursuant to Section 4.03, as well as all such payments or amounts thereafter received by the Indenture Trustee as part of the Indenture Estate, shall be distributed forthwith upon receipt by the Indenture Trustee in the following order of priority (provided, that if such Indenture Event of Default is not also an Event of Default any amounts or payments held by the Indenture Trustee hereunder on behalf of, for the account of, or in trust for, the Lessee pursuant to Section 9(b) and Section 10(c) of the Equipment Lease, shall not, unless and until such amounts or payments are applied against the Lessee's obligations under the Equipment Lease pursuant to the terms of such sections, be subject to distributions under this Section 3.03):

> *first*, (i) so much of such payments or amounts as shall be required to reimburse the Indenture Trustee for any Tax (other than any income Tax payable on interest or the Make-Whole Amount paid pursuant to a Note and on fees and other compensation of the Indenture Trustee), expense or other amount owed to the Indenture Trustee in connection with the collection or distribution of such payments or amounts (excluding those amounts referred to in clause (ii) of this clause "first", but including, without limitation, all amounts to be expended at the expense of, or charged upon the tolls, rents, revenues, issues, products and profits of, the Collateral pursuant to Section 4.06(b)) to the extent not previously reimbursed by the Lessee (including, without limitation, the expenses of any sale, taking or other proceeding, expenses in connection with realizing on any of the collateral in the Indenture Estate, reasonable attorneys' fees and expenses, court costs and any other reasonable expenditures incurred or reasonable expenditures or advances made by the Indenture Trustee in the protection, exercise or enforcement of any right, power or remedy upon such Indenture Event of Default) shall be so applied by the Indenture Trustee, and (ii) so much of such payments or amounts as shall be required to pay the reasonable fees and compensation of the Indenture Trustee in connection with acting as Indenture Trustee not previously paid by the Lessee, shall be distributed to the Indenture Trustee;

> *second*, (i) so much of such payments or amounts remaining as shall be required to reimburse the Noteholders for payments or deposits pursuant to Section 5.03 (to the extent not previously reimbursed and to the extent not constituting an indemnity paid or payable on account of an act or failure to act constituting gross negligence or willful

-14-

misconduct) shall be distributed to the Noteholders, ratably, without priority of one over the other, in accordance with the amount of the payments or deposits made by each such Noteholder pursuant to Section 5.03 and (ii) so much of such payments or amounts remaining as shall be required to pay the Noteholders the amounts payable to them pursuant to the provisions of Section 13 of the Participation Agreement and the amounts of all other unpaid Obligations then due and payable to them (other than Obligations covered by clause "third" of this Section 3.03) shall be distributed to each Noteholder entitled  thereto; and in case the aggregate amount so to be paid in accordance with clauses (i) and (ii) above shall be insufficient to pay all such amounts as aforesaid, then, ratably, without priority of one such Person over the other, in the proportion that the amount which would have been distributed to each such Person pursuant to this clause "second" but for such insufficiency bears to the aggregate amount which would have been distributed to all such Persons pursuant to this clause "second" but for such insufficiency;

*third*, so much of such payments or amounts remaining as shall be required to pay in full the aggregate unpaid principal amount of, and all accrued but unpaid interest (including, to the extent permitted by Applicable Law, interest on interest) on, all of the Notes, shall be distributed to the Noteholders, and in case the aggregate amount so to be distributed shall be insufficient to pay such unpaid principal and such interest in full as aforesaid, then, ratably, without priority of one over the other, in the proportions that the aggregate unpaid principal amount of, and all accrued but unpaid interest to the date of distribution on, all Notes held by each such Noteholder bears to the aggregate unpaid principal amount of, and all such accrued but unpaid interest to the date of distribution on, all Notes held by all such Noteholders;

*fourth*, so much of such payments or amounts remaining as shall be required to pay in full the Owner Participant's Economic Return;

*fifth*, so much of such payments or amounts remaining as shall be required to pay in full the Make-Whole Amount, if any (there being Make-Whole Amount payable as a result of acceleration of the Notes upon the occurrence of an Indenture Event of Default), due and payable on all of the Notes, shall be distributed to the Noteholders, and in case the aggregate amount so to be distributed shall be insufficient to pay such unpaid Make-Whole Amount, if any, in the proportion that the aggregate unpaid Make-Whole Amount, if any, due and payable on all Notes held by each such Noteholder bears to the aggregate unpaid Make-Whole Amount, if any, due and payable on all Notes held by all such Noteholders

*sixth*, the balance, if any, of such payments or amounts remaining thereafter shall be paid to the Lessor.

*Section 3.04.    Payments for Other Specific Purposes.*  Except as otherwise provided in Sections 3.03 and 3.07, any payments constituting a part of the Indenture Estate received by the Indenture Trustee for which no provision as to the application thereof is made elsewhere in this Section 3 and for which provision as to the application thereof is made in the Participation

Agreement, the Equipment Lease, the Trust Agreement (giving effect to provisions of the Trust Agreement for payments and distributions by the Owner Trustee of amounts that would otherwise be received by the Owner Trustee but for the proviso of the first sentence of Section 3(d) of the Equipment Lease) or any other Operative Document, shall be applied to payment to the Person who is entitled thereto in accordance with such provision of the Participation Agreement, the Equipment Lease, the Trust Agreement or such other Operative Document, as the case may be.

Section 3.05.    *Other Payments.*  Except as otherwise provided in Sections 3.03 and 3.07:

(a)    any payments received by the Indenture Trustee constituting a part of the Indenture Estate for which no provision as to the application thereof is made in the Participation Agreement, the Equipment Lease or any other Operative Document, or elsewhere in this Section 3, and

(b)    all payments received and amounts realized by the Indenture Trustee under the Equipment Lease or otherwise with respect to the Equipment or any of the Collateral to the extent received or realized at any time, any other amounts remaining as part of the Indenture Estate, and all amounts received pursuant to Section 2.04(b), after payment in full of all unpaid principal of, all unpaid Make-Whole Amount, if any, due and payable on, and all accrued but unpaid interest on, all Notes, shall be promptly distributed by the Indenture Trustee in the following order of priority:

*first*, in the manner provided in clause "first" of Section 3.03;

*second*, in the manner provided in clause "second" of Section 3.03; and

*third*, to the Lessor.

Section 3.06.    *Payments to Lessor After Default or Under Section 9(e) of the Equipment Lease*.  (a) Anything in this Section 3 (other than Section 3.06(b)) to the contrary notwithstanding, if an Indenture Default or Indenture Event of Default shall have occurred and be continuing, all amounts (other than Excepted Payments) that, but for the provisions of this Section 3.06, would otherwise be distributable by the Indenture Trustee to the Lessor, shall be held by the Indenture Trustee as part of the Indenture Estate until the earlier to occur of (i) the date on which such Indenture Default or Indenture Event of Default shall have been cured or waived pursuant to Section 4.04 or 4.16, as applicable and (ii) acceleration of the Notes pursuant to Section 4.03 occurs and such amounts are applied pursuant to Section 3.03; *provided* that if (A) such amounts shall have been retained by the Indenture Trustee pursuant to this Section 3.06(a) for a period of 270 days during which time such unpaid principal amount of all the Notes could, but shall not, have been accelerated, then all amounts so held by the Indenture Trustee under this Section 3.06(a) for such 270–day period shall on the 271st day be distributed to the Lessor.

(b)    All payments or amounts received by the Indenture Trustee referred to in Section 9(e) of the Equipment Lease shall be held or applied by the Indenture Trustee as part of

-16-

the Indenture Estate in accordance with such Section 9(e) and, if the Lien of this Indenture is discharged pursuant to Section 10.01 prior to the time such payments or amounts become distributable pursuant to Section 3.03, such payments or amounts shall be distributed to the Lessor.

Section 3.07.    *Excepted Payments*.  Notwithstanding any other provision of this Section 3, any Excepted Payments, if received by the Indenture Trustee at any time, shall be promptly paid by the Indenture Trustee to the Person entitled thereto.

Section 3.08.    *Distributions to the Owner Participant*.  Unless otherwise directed in writing by the Lessor, Lessor hereby acknowledges and agrees that all amounts from time to time distributable by the Indenture Trustee to the Lessor in accordance with the provisions hereof shall be paid by the Indenture Trustee to the Owner Participant in immediately available federal funds if received by the Indenture Trustee in immediately available federal funds to the account specified in Schedule I of the Participation Agreement, and in any event, as promptly as possible.

Section 3.09.    *Investment of Amounts Held by the Indenture Trustee; Investment Disclosure*.  (a) In the event that any amounts held by the Indenture Trustee are not immediately distributable pursuant to this Section 3, such amounts shall be invested by the Indenture Trustee from time to time as directed in writing by the Lessor, and at the expense and risk of the Lessor, but only in Permitted Investments.  Any income or gain realized as a result of any such investment of such amounts pursuant to the first sentence of this Section 3.09 shall be applied to make up any losses resulting from any such investment and any other income or gain so realized shall be promptly distributed to the Lessor so long as no Indenture Event of Default shall have occurred and be continuing.  The Indenture Trustee shall have no liability for any loss resulting from any investment of such amounts pursuant to this Section 3.09 other than by reason of the willful misconduct or gross negligence (except that it shall be answerable and accountable for its negligent handling of money actually received by it in accordance with the terms hereof) of the Indenture Trustee.  Any investment of such amounts pursuant to this Section 3.09 may be sold or otherwise reduced to cash (without regard to maturity date) by the Indenture Trustee whenever the Indenture Trustee reasonably believes such sale is necessary to make any distribution required by this Section 3 and the Indenture Estate has insufficient funds therefor.

(b)    The parties acknowledge that shares or investments in Permitted Investments are not obligations of Bank of Utah or any parent or affiliate of Bank of Utah, are not deposits and are not insured by the FDIC.  The Indenture Trustee or its affiliate may be compensated by mutual funds or other investments comprising Permitted Investments for services rendered in its capacity as investment advisor, or other service provider, and such compensation (i) is described in detail in the prospectuses for such funds or investments and (ii) is in addition to the compensation, if any, paid to Bank of Utah in its capacity as Indenture Trustee hereunder.  The parties agree that the Indenture Trustee shall not be responsible for any losses or diminution in the value of the funds held by it occurring as a result of the investment of such funds in accordance with the terms hereof.