# Exhibit C

EXECUTION VERSION





MACQUARIE

---

**REMARKETING AGREEMENT**

**MACQUARIE ELECTRONICS USA INC.**
(the "Service Provider")

**BANK OF UTAH**
(the "Indenture Trustee, on behalf of
the Loan Participants")

SFODMS/6530966.6

STRICTLY CONFIDENTIAL

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **1** | **Remarketing** | **2** |
| 1.1 | Exclusive Period | 2 |
| 1.2 | Payment of Remarketing Fee | 3 |
| 1.3 | No Obligation to Purchase | 3 |
| | | |
| **2** | **Rights and Responsibilities – Service Provider** | **3** |
| 2.1 | Obligations of Service Provider | 3 |
| 2.2 | Priority of Activities | 4 |
| 2.3 | No Conflicts of Interest | 4 |
| 2.4 | No Sale without Indenture Trustee consent | 4 |
| 2.5 | Costs of Service Provider | 4 |
| | | |
| **3** | **Rights and Responsibilities - Indenture Trustee** | **5** |
| 3.1 | No Right to Deal with Equipment during Exclusive Period | 5 |
| 3.2 | Consideration of Offers | 5 |
| 3.3 | Consent to Offers | 5 |
| | | |
| **4** | **Payment** | **6** |
| 4.1 | Payment by Indenture Trustee | 6 |
| | | |
| **5** | **General Terms** | **6** |
| 5.1 | Indemnity | 6 |
| 5.2 | Term | 6 |
| 5.3 | Termination | 7 |
| 5.4 | Review Meetings | 7 |
| 5.5 | Contacts | 7 |
| | | |
| **6** | **Miscellaneous** | **7** |
| 6.1 | Governing Law | 7 |
| 6.2 | Assignment | 8 |
| 6.3 | Entire Agreement | 8 |
| 6.4 | Variations and Waivers | 8 |
| 6.5 | No Partnership | 8 |
| 6.6 | Damages | 8 |
| 6.7 | Counterparts | 9 |
| 6.8 | Service of Parties and Jurisdiction; Waiver of Immunity | 9 |



MACQUARIE

SFODMS/6530966.6

STRICTLY CONFIDENTIAL

| | | |
|---|---|---|
| 6.9 | Severability | 9 |
| **7** | **Interpretation** | **9** |
| 7.1 | Definitions | 9 |
| 7.2 | Interpretation | 11 |
| 7.3 | Headings, Etc. | 12 |



MACQUARIE

SFODMS/6530966.6

STRICTLY CONFIDENTIAL

# REMARKETING AGREEMENT

| **DETAILS** | | |
|---|---|---|
| **SERVICE PROVIDER** | Name | **Macquarie Electronics USA Inc.** |
| | Address | 11440 West Bernardo Court, Suite 366<br>San Diego, California 92127 |
| | Telephone | 858-207-1088 |
| | Fax | 858—207-1097 |
| | Remarketing Contact/<br>Authorized<br>Signatory(ies) | Chuck Dale |
| **INDENTURE TRUSTEE** | Name | **BANK OF UTAH** |
| | Address | 200 E. South Temple, Suite 210<br>Salt Lake City, Utah 84111 |
| | Telephone | (801) 924-3690 |
| | Fax | (801) 746-3519<br>Attention: Corporate Trust Services |
| **GOVERNING LAW** | | New York |
| **DATE OF AGREEMENT** | | **September 28, 2007** |

**These Details form part of this Agreement.**



MACQUARIE

SFODMS/6530966.6

STRICTLY CONFIDENTIAL

## REMARKETING AGREEMENT - GENERAL TERMS

Whereas:

a.  The Indenture Trustee, in its capacity as Indenture Trustee under that certain Trust Indenture and Security Agreement, dated as of September 28, 2007 between Wells Fargo Bank Northwest, National Association as Owner Trustee (the "*Owner Trustee*") and Lessor (the "*Indenture*") has or will have the benefit of the Indenture in connection with the Equipment provided under the Equipment Lease Agreement (the "*Lease*") with Qimonda Richmond, LLC (the "*Lessee*") and Lessor dated [**date**]; and

b.  In connection with the Lease (i) the Lessee, the Owner Trustee, the Service Provider, as Owner Participant, the Loan Participants and Indenture Trustee entered into the Participation Agreement, dated as of September 28, 2007 (the "*Participation Agreement*") and (ii) the Owner Participant and Owner Trustee entered into that certain Trust Agreement dated as of September 28, 2007 for the benefit of the Owner Participant.

c.  The Service Provider and its Affiliates have significant experience in the remarketing of semi- conductor manufacturing and testing equipment.

d.  The Service Provider as Owner Participant has or will invest in the residual value of the Equipment and has agreed to grant the first ranking security interest in the Equipment pursuant to the Indenture on the basis that it is able to protect its investment in the Equipment through being entitled to remarket that Equipment should an Event of Default occur under the Lease, no Service Provider Event of Default shall have occurred and the Indenture Trustee, as directed by the Required Holders has foreclosed on the Equipment, terminated the Lease and repossessed the Equipment.

now it is hereby agreed as follows:

In consideration of the mutual promises contained in this Agreement, the Indenture Trustee, to the extent permitted under applicable law, appoints the Service Provider to act as the Indenture Trustee's agent and exclusive remarketer of the Equipment on the terms of this Agreement.

## 1    REMARKETING

### 1.1    Exclusive Period

During the Exclusive Period, the Indenture Trustee hereby grants the Service Provider the exclusive opportunity to remarket the Equipment during the Exclusive Period; provided,



MACQUARIE

PAGE 2

SFODMS/6530966.6

STRICTLY CONFIDENTIAL

however, that such exclusive opportunity shall immediately cease and this Agreement shall terminate upon the termination of this Agreement by the Indenture Trustee upon or following the occurrence of a Service Provider Event of Default as provided in clause 5.3. If the Service Provider is unable to locate a purchaser or other user of the Equipment acceptable to the Indenture Trustee (acting reasonably) by the end of its Exclusive Period or earlier termination of this Agreement as specified in the immediately preceding sentence, the Indenture Trustee may use other persons to sell or otherwise deal with the Equipment as directed by the Required Holders in their sole and absolute discretion.

## 1.2 Payment of Remarketing Fee

If the Service Provider arranges for the sale or re-leasing of the Equipment, upon the Indenture Trustee's consent to the proposed sale or re-leasing, the Remarketing Fee in relation to such Equipment shall be payable to the Service Provider as provided in clause 4.

## 1.3 No Obligation to Purchase

For the avoidance of doubt, the Service Provider is not obliged to purchase the Equipment.

# 2 RIGHTS AND RESPONSIBILITIES – SERVICE PROVIDER

## 2.1 Obligations of Service Provider

The Service Provider will conduct the remarketing of Equipment as agent for Indenture Trustee as follows:

i. within ten (10) days of either (i) the Commencement Date or (ii) the date the Indenture Trustee makes a written request to the Service Provider, the Service Provider shall provide to the Indenture Trustee an Assessment relating to that Equipment;

ii. from the Commencement Date, the Service Provider shall use its best efforts to remarket and obtain the highest Sales Price for that Equipment during its Exclusive Period;

iii. when remarketing Equipment, the Service Provider will:

    a. use all reasonable remarketing methods, including, but not limited to, the internet and direct marketing;



MACQUARIE

STRICTLY CONFIDENTIAL

b.  promptly submit to the Indenture Trustee all Offers it receives as it receives such offers to purchase or re-lease the relevant Equipment; and

c.  if an Offer is approved by the Indenture Trustee as being acceptable, complete the necessary sale or lease documentation (including providing releases from any encumbrances over that Equipment, where appropriate in accordance with the terms of the Indenture).

## 2.2  Priority of Activities

The Service Provider will perform the remarketing activities in a commercially reasonable manner consistent with prudent industry standards so as to obtain the highest possible Offers for the Equipment and in a manner no less diligent than those undertaken for other customers of the Service Provider and its Affiliates, provided that the remarketing activities performed on behalf of the Indenture Trustee will not be deemed to have priority over similar activities for other customers of the Service Provider or its Affiliates.

## 2.3  No Conflicts of Interest

The Indenture Trustee acknowledges that the Service Provider and its Affiliates may have equipment sourcing arrangements with prospective purchasers of Equipment, and may earn a fee from the purchaser of Equipment (the "*Purchaser Fee*") that acquires Equipment in addition to the Remarketing Fee; provided, however, that such Remarketing Fee shall be reduced by any such Purchaser Fee.  The Indenture Trustee agrees that the existence of such sourcing arrangements, and the performance of the Service Provider or its Affiliates of the obligations under those sourcing arrangements, do not conflict with the obligations of the Service Provider under this Agreement.

## 2.4  No Sale without Indenture Trustee consent

In addition to the obligations under the Indenture, the Service Provider hereby agrees that it shall not accept or reject an Offer, purport to sell or lease or otherwise conclude a contract concerning Equipment without having first obtained the prior written consent from the Indenture Trustee pursuant to clause 3.3.  The Service Provider hereby agrees that it shall accept or reject any offer only as directed by the Indenture Trustee pursuant to clause 3.3.

## 2.5  Costs of Service Provider

Subject to clause 4, the Service Provider shall bear all costs and expenses incurred with respect to the remarketing activities contemplated by this Agreement unless otherwise agreed to in writing by both Parties.



MACQUARIE

STRICTLY CONFIDENTIAL

**2.6    Right of Service Provider to payout Indenture Trustee and Loan Participants**

During the Exclusive Period, the Service Provider may in its sole discretion elect to pay the Indenture Trustee an amount equal to the entire unpaid principal and the interest on the Notes and all other amounts due and owing to the Indenture Trustee and the Loan Participants under the Operative Documents (excluding in any event any Make-Whole Amount, as such term is defined in Schedule A to the Participation Agreement).  If the Service Provider makes such a payment, then the Indenture Trustee shall immediately provide an unconditional and final release of the rights and interests of the Indenture Trustee and Loan Participants under the Indenture and other Operative Documents (other than any such rights that under the terms of such Operative Documents survive the termination thereof) and assign to the Service Provider all of the remaining rights, title and interest they may have under the Lease Agreement (if any) and other Operative Documents (if any) (other than any such rights that under the terms of such Operative Documents survive the termination thereof) and in the Equipment and proceeds thereof.

# 3    RIGHTS AND RESPONSIBILITIES - INDENTURE TRUSTEE

**3.1    No Right to Deal with Equipment during Exclusive Period**

Notwithstanding the rights granted to the Indenture Trustee pursuant to the Indenture, the Indenture Trustee shall not attempt to sell, actually sell or otherwise deal with Equipment or exercise any right or remedy under the Operative Documents in violation of the Service Provider's exclusive right to remarket the Equipment as provided herein, in each case, during the Exclusive Period other than in accordance with this Agreement; provided, however, that pending such remarketing in the case of any of the Equipment as provided herein, the Indenture Trustee shall be entitled to preserve and protect such Equipment.

**3.2    Consideration of Offers**

The Indenture Trustee will promptly consider in good faith all Offers submitted to it by the Service Provider for approval and the Indenture Trustee shall promptly advise the Service Provider of any Offers received by it directly or through any third party.  The Indenture Trustee has the right to accept or reject any Offer for any reason whatsoever and regardless of the fact that the Sale Price or re-leasing rental rate is below, at or above a fair market value for the Equipment.

**3.3    Consent to Offers**

The Indenture Trustee must provide its written approval or rejection of any Offer submitted by the Service Provider by providing a notice to the Service Provider within 10 Business Days of the date the Offer was provided to the Indenture Trustee.



MACQUARIE

STRICTLY CONFIDENTIAL

## 4    PAYMENT

### 4.1    Payment by Indenture Trustee

Where the Service Provider or Indenture Trustee (as the case may be) sells or re-leases the Equipment pursuant to an approved Offer during the Exclusive Period, then the proceeds from such events shall be applied in the following order:

i.   to reimburse the Service Provider for its Remarketing Expenses approved by Indenture Trustee and any Remarketing Fee (less any such Purchaser Fee) payable by virtue of the Service Provider having sold or re-leased the Equipment; and once fully satisfied, then,

ii.  all remaining proceeds shall be applied in the order and in accordance with the terms of Section 3.03 of the Indenture.

## 5    GENERAL TERMS

### 5.1    Indemnity

The Service Provider hereby agrees to assume, and does hereby assume, liability for, and hereby agrees to indemnify, and does hereby indemnify, and hereby agrees to protect, defend, save and keep harmless the Indenture Trustee, the Loan Participants, the Noteholders and their respective affiliates, agents, directors, officers and employees (each an "*Indemnitee*") from and against any and all liabilities, obligations, losses, damages, penalties, settlements, claims (including Environmental Claims), actions, suits, proceedings or judgments of any kind and nature, costs, expenses (including reasonable attorneys' fees and disbursements) and disbursements of any kind and nature whatsoever which may be imposed on, incurred by or asserted against any Indemnitee in any way relating to or arising out of this Agreement or the transactions contemplated hereby or the enforcement of any of the rights, remedies or terms of any thereof (all of the foregoing, a "Claim"); provided, however, that the Service Provider shall not be obligated to pay and shall have no indemnity liability for any Claim to the extent imposed on or against an Indemnitee to the extent that such Claim is caused by the gross negligence or willful misconduct of such Indemnitee.

### 5.2    Term

This Agreement is effective from the Date of Agreement set forth in the Details to this Agreement and shall continue for the Term unless otherwise terminated in accordance with clause 5.3.



MACQUARIE

STRICTLY CONFIDENTIAL

### 5.3    Termination

This Agreement may not be terminated by either party until the earlier of the end of the Term or the date of payment in full of all amounts due and owing to the Indenture Trustee and the Noteholders under the Operative Documents and the release of the Lien of Indenture, whereupon this Agreement shall automatically terminate.  Notwithstanding the prior sentence the Indenture Trustee may terminate this Agreement upon the occurrence of Service Provider Event of Default or the failure of the Service Provider to perform its duties, in accordance with terms hereof, in the reasonable determination of the Required Holders.  Upon such termination the Indenture Trustee shall be entitled to exercise all of its rights and remedies as set forth herein, in the Indenture or any other Operative Document or under applicable law, or for any claim against the Service Provider including for damages as a result of the Service Provider's failure to perform its obligations hereunder.

### 5.4    Review Meetings

The Parties shall meet or teleconference not less than monthly from the Commencement Date to review the status of the remarketing of Equipment.

### 5.5    Contacts

5.5.1    The parties shall conduct communications necessary or required under this Agreement through the contacts specified in the Details.

5.5.2    Only the Service Provider's Authorized Signatories identified in the Details, acting severally, shall be authorized to prepare, amend and submit to the Indenture Trustee, Assessments and Offers for each item.

5.5.3    Only a vice president of the Indenture Trustee, as directed by the Required Holders, shall be authorized to sign or approve Offers for each item.

5.5.4    The Service Provider will promptly notify the Indenture Trustee in writing of any changes to its Contacts or Authorized Signatories.

## 6    MISCELLANEOUS

### 6.1    Governing Law

This Agreement and the rights and obligations of the Parties shall be governed by and construed in accordance with the laws of the jurisdiction specified in the Details (disregarding for this purpose any principles of conflict of laws that would lead to the



MACQUARIE

STRICTLY CONFIDENTIAL

application of the law of any other jurisdiction) and each party submits to the non-exclusive jurisdiction of that jurisdiction.

## 6.2    Assignment

Subject to the last sentence of this Section 6.2, the Indenture Trustee and any Loan Participant may assign, delegate or subcontract its rights or obligations under this Agreement in accordance with terms of the Participation Agreement.  The Service Provider may assign or subcontract its rights or obligations pursuant to this Agreement to any of its Affiliates without the prior consent of the Indenture Trustee or any other party hereto.  The Service Provider may assign or subcontract its rights or obligations pursuant to this Agreement to any party that is not an Affiliate of the Service Provider only with the prior written consent of the Indenture Trustee.  The Indenture Trustee agrees to provide copies of this Agreement to any assignee of a Noteholder.  NEITHER THE INDENTURE TRUSTEE NOR ANY LOAN PARTICIPANT MAY EFFECT ANY TRANSFER OF ITS RIGHTS AND INTERESTS UNDER THE OPERATIVE DOCUMENTS UNLESS ITS TRANSFEREE/SUCCESSOR HAS EXECUTED AN INSTRUMENT TO BECOME BOUND BY THE TERMS OF THIS AGREEMENT.

## 6.3    Entire Agreement

This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes all previous and collateral agreements, representations, warranties, promises, and conditions relating to the subject matter hereto, including all proposals, oral, or written between the parties.

## 6.4    Variations and Waivers

A term of this Agreement, or a right created under this Agreement, may only be waived or varied if it is in writing and signed by the party or parties to be bound.

## 6.5    No Partnership

This Agreement does not create a partnership or joint venture relationship between the Indenture Trustee and the Service Provider.

## 6.6    Damages

Neither party will be liable for special, consequential or incidental damages as a result of a breach of this Agreement.



MACQUARIE

STRICTLY CONFIDENTIAL

**6.7      Counterparts**

This Agreement may consist of a number of counterparts and the counterparts taken together constitute one and the same instrument. A facsimile copy of this Agreement will be as legally binding as an originally executed document delivered by other means.

**6.8      Service of Parties and Jurisdiction; Waiver of Immunity**

The terms of clause 15 of the Participation Agreement are hereby incorporated into this Agreement.

**6.9      Severability**

If any provision of this Agreement or portion of this Agreement is held to be unenforceable or invalid by any court of competent jurisdiction, such provision or portion shall be deemed amended to conform to applicable law so as to be valid and enforceable or, if the provision or portion cannot be so amended without materially altering the intention of the parties, the provision or portion shall be stricken, and the validity and enforceability of the remainder of this Agreement shall not be affected thereby.


**7        INTERPRETATION**

**7.1      Definitions**

Terms defined in the Details to this Agreement are used herein as so defined. In addition, the terms used herein and not defined herein shall have the meanings given to them in the Lease and as set forth below (and to the extent of any inconsistency, the definitions below shall prevail):

**Affiliates** means any of Macquarie Electronics Remarketing Limited, Macquarie Electronics USA Inc, Macquarie (Asia) Pte Limited – Taiwan Branch, Macquarie Asia Pte Limited, and Macquarie Japan Limited, but only to the extent that such entities remain wholly owned members of the Macquarie Group. Macquarie Group means Macquarie Bank Limited, any parent entity of which Macquarie Bank Limited is a wholly owned subsidiary, and any of their respective wholly owned subsidiaries.

**Assessment** means with respect to an item of Equipment, a written assessment made by the Service Provider of its estimation of the fair market value and expected time to sell the Equipment.

**Business Day** has the meaning set forth in Schedule A to the Participation Agreement.


MACQUARIE

STRICTLY CONFIDENTIAL

**Claim** has the meaning set forth in clause 5.1.

**Commencement Date** means the date on which each of the following shall have occurred: an Event of Default and the Indenture Trustee shall have accelerated the Notes, completed the foreclosure on the Equipment, terminated the Lease, repossessed the Equipment and provided written notice to the Service Provider of such foreclosure and repossession.

**Commercial Details** means details of existing or potential purchasers of Equipment which are known to, or become known to the Service Provider.

**Environmental Claim** has the meaning set forth in Schedule A to the Participation Agreement.

**Equipment** has the meaning set forth in Schedule A to the Participation Agreement.

**Event of Default** has the meaning set forth in Schedule A to the Participation Agreement.

**Exclusive Period** means the period of time commencing on the Commencement Date and continuing for a period of 180 days after the Commencement Date; provided, however, that such Exclusive Period may be extended at the request of the Service Provider and with the prior written consent of the Indenture Trustee.

**Indemnitee** has the meaning set forth in clause 5.1.

**Indenture Event of Default** has the meaning set forth in Schedule A to the Participation Agreement.

**Lease** has the meaning set forth in clause (a) of the recitals hereto.

**Lessee** has the meaning set forth in clause (a) of the recitals hereto.

**Lessor** means the Owner Trustee.

**Lien** has the meaning set forth in Schedule A to the Participation Agreement.

**Loan Participants** has the meaning set forth in Schedule A to the Participation Agreement.

**Noteholders** has the meaning set forth in Schedule A to the Participation Agreement.

**Notes** has the meaning set in Schedule A to the Participation Agreement.

**Offer** means any written offer made to purchase or re-lease the Equipment being remarketed by the Service Provider, and includes any offer which is amended or varied.


MACQUARIE

STRICTLY CONFIDENTIAL

**Operative Documents** has the meaning set forth in Schedule A to the Participation Agreement.

**Owner Participant** means the Service Provider.

**Owner Trustee** has the meaning set forth in clause (a) of the recitals hereto.

**Participation Agreement** has the meaning set forth in clause (b) of the recitals hereto.

**Purchaser Fee** has the meaning set forth in clause 2.3 hereof.

**Remarketing Expenses** means all reasonably incurred out of pocket expenses and costs incurred by the Service Provider (and approved by Indenture Trustee) in its remarketing efforts of the Equipment, which expenses may include but not be limited to the reasonable costs of storage, transportation, crating, auditing and refurbishment.

**Remarketing Fee** means in relation to any Equipment consented to be sold or re-leased by the Indenture Trustee (pursuant to clause 3.3), a fee of five percent (5.0 %) of the Sales Price for the Equipment, net of taxes, transportation, and other fees or costs associated with the sale or re-lease of the Equipment.

**Required Holders** has the meaning set forth in Schedule A to the Participation Agreement.

**Sales Price** means in relation to any Equipment the gross sales price in the case of a sale or the gross sum of the re-lease rentals in the case of a lease set forth in the related Offer, such gross sum being discounted to present value at the discount rate provided for in such lease, net of taxes, transportation and other fees or costs.

**Service Provider Event of Default** means the occurrence of an Indenture Event of Default that is caused by an act, omission, failure or breach of the Owner Participant and is not the result of an Event of Default.

**Term** means the period commencing upon the Commencement Date and ending on the last day of the Exclusive Period.

## 7.2    Interpretation

In this Agreement unless the contrary intention appears:

i.    the Details form part of this Agreement;

ii.   a reference to this Agreement or another instrument includes any variation to or replacement of any of them;



MACQUARIE

PAGE 11

iii. a reference to a statute, ordinance, code or other law includes regulations and other instruments under it and consolidations, amendments, re-enactments or replacements of any of them;

iv. "$" or "USD" is a reference to the lawful currency of the United States of America;

v. the singular includes the plural and vice versa;

vi. the word "person" includes a firm, body corporate, an unincorporated association or an authority; and

vii. a reference to a person includes a reference to the person's executors, administrators, successors, substitutes (including without limitation, persons taking by novation) and assigns.

**7.3    Headings, Etc.**

Headings are inserted for convenience and do not affect the interpretation of this Agreement.

Signatures on following page



SFODMS/6530966.6

STRICTLY CONFIDENTIAL

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed and delivered as of the Date of Agreement set forth in the Details above, and each warrant and represent that their respective signatory whose signature appears below has been and is on the date of this Agreement duly authorized by all necessary and appropriate corporate action to execute this Agreement.

**MACQUARIE ELECTRONICS USA INC.**
as Service Provider

By: _David Coons_

Name: _David Coons_

Title: _President_

Date: _September 28 2007_

**BANK OF UTAH**
as Indenture Trustee

By: _____

Name: _____

Title: _____

Date: _____

By: _____

Name: _____

Title: _____

Date: _____



MACQUARIE

PAGE 13



STRICTLY CONFIDENTIAL

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed and delivered as of the Date of Agreement set forth in the Details above, and each warrant and represent that their respective signatory whose signature appears below has been and is on the date of this Agreement duly authorized by all necessary and appropriate corporate action to execute this Agreement.

**MACQUARIE ELECTRONICS USA INC.**
as Service Provider

**BANK OF UTAH**
as Indenture Trustee

By: _____     By: _____

Name: _____     Name: _____

Title: _____     Title: _____

Date: _____     Date: _____

By: _Douglas Fritch_
Name: _Douglas Fritch_
Title: _S.V.P._
Date: _September 28, 2007_

STRICTLY CONFIDENTIAL

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed and delivered as of the Date of Agreement set forth in the Details above, and each warrant and represent that their respective signatory whose signature appears below has been and is on the date of this Agreement duly authorized by all necessary and appropriate corporate action to execute this Agreement.

**MACQUARIE ELECTRONICS USA INC.**
as Service Provider

**BANK OF UTAH**
as Indenture Trustee

| | |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: ~~Nancy M. Dahl~~ Vice President |
| Title: _____ | Title: _____ |
| Date: _____ | Date: *September 28, 2007* |

By: _____

Name: _____

Title: _____

Date: _____


MACQUARIE

PAGE 13

STRICTLY CONFIDENTIAL

The undersigned hereby authorize and agree to the above and direct the Indenture Trustee to execute this Agreement:

BANK SINOPAC,
  as a Loan Participant

By: _____
Name: ___ALTON WANG_____
Title: ___FVP, GENERAL MANAGER___



MACQUARIE

STRICTLY CONFIDENTIAL

The undersigned hereby authorize and agree to the above and direct the Indenture Trustee to execute this Agreement:

**IBM CREDIT LLC,**
  **as a Loan Participant**

By: _E. M. Earley (signature)_
Name:  E. M. Earley
Title:  Sr. Customer Ops. Mgr.



STRICTLY CONFIDENTIAL

The undersigned hereby authorize and agree to the above and direct the Indenture Trustee to execute this Agreement:

THE CIT GROUP/EQUIPMENT FINANCING, INC.,
    as a Loan Participant

By: _____
Name: _____MARK SAYLOR, VP_____
Title: _____



STRICTLY CONFIDENTIAL

The undersigned hereby authorize and agree to the above and direct the Indenture Trustee to execute this Agreement:

BANC OF AMERICA LEASING & CAPITAL, LLC,
  as a Loan Participant

By: *Sonia Delen*

Name: **Sonia T. Delen**
Title: **Senior Vice President**



STRICTLY CONFIDENTIAL

The undersigned hereby authorize and agree to the above and direct the Indenture Trustee to execute this Agreement:

MERRILL LYNCH CAPITAL, A DIVISION OF
  MERRILL LYNCH BUSINESS FINANCIAL
  SERVICES INC.,
**as a Loan Participant**

By: _____

Name: _____

Title: _____



STRICTLY CONFIDENTIAL

The undersigned hereby authorize and agree to the above and direct the Indenture Trustee to execute this Agreement:

AIG COMMERCIAL EQUIPMENT FINANCE, INC., as a Loan Participant

By: _____

Name: James R. Bates

Title: Vice President

